## MONTGOMERY & WIFE vs. LANDUSKY.

1. The act of Congress of June 13, 1812, confirmed the lots to the claimants, and the certificate of the recorder is only evidence of that confirmation.

2. Although the recorder's certificate be *prima facie* evidence that the person to whom it was issued was entitled to the lot confirmed, it may be rebutted.

3. A certificate issued to the legal representatives of A, when A had, before the certificate issued, sold the lot to B, will not operate to the benefit of the heirs of A.

## APPEAL from Washington Circuit Court.

COLE, for Appellants.

### POINTS AND AUTHORITIES.

1. That the lot in controversy was confirmed to the children of Russ.
2. That their title as proved was sufficient to maintain the action.
3. That the deed to Andrew Henry, did not operate a bar to the recovery of plaintiff, because it was not a present operation and subsisting title. 3 John. R. 375; 6 Peters' Rep. 312.
4. That a trespasser in the condition of defendant, cannot protect himself by shewing an outstanding title in a stranger, superior to plaintiff's. 4 John. Rep. 202; 1 Tenn. Rep. 515.
5. If Henry had title at any time, yet when presented on the trial as a bar, it could not operate as such, as his right of entry was tolled by lapse of time, there having more than twenty years expired, between date of confirmation and the time of trial in the circuit court.
6. The plaintiffs are the legal representatives of Thomas Russ. The confirmation uses these words as a description of the person to whom the grant is made, for the plaintiffs do not claim title to this lot from Russ, but by way of donation from the United States. 8 Mo. Rep. 84; 4 Mo. Rep. 319; 5 M. R. 164; Bl. Com. Title Descent; 14 John. Rep. 193; 11 John. Rep. 91; 6 Littell's Rep. 468; C. Litt. 8, 446, a 6; 3 John. Rep. 336.
7. There is no evidence to show that Thomas Russ settled, or cultivated this lot at any time. See U. S. Land Laws, vol. 1, pages 620 and 885.
8. There is no evidence to show that Andrew Henry had at any time whatever, the use or possession of this lot.
9. There could be but one right of entry in the lot, and that was and is in the plaintiffs.

FRISSELL, for Appellee.

On the part of the defendant in error it is contended,

1. That Andrew Henry, or those claiming under him, at the time of the confirmation, were the *legal representatives* of Thomas Russ, the original claimant of the lot in question, and that the confirmation by the recorder of land titles, on the 15th of July, 1826, under the act of Congress of May 26, 1824, enured to the benefit of Andrew Henry, and those claiming under him.

2. That the fact that Landusky produced the conveyance from Thomas Russ to Andrew Henry, is evidence of privity of title between Andrew Henry and the defendant in error.

3. That the conveyance of Thomas Russ to A. Henry, divested Russ and *his heirs* of all title to the lot in question; and neither Russ, nor his heirs could recover the possession against one in possession.

4. That plaintiff in error claiming by right of his wife, is estopped by the deed from Russ to Henry, from claiming possession of the premises.

5. That the plaintiff in error cannot insist upon any right acquired from John Russ, unless he shows that he is a purchaser without notice of Henry's title; and this conveyance from Russ to Henry was duly acknowledged and recorded, and plaintiff had constructive, if not actual notice.

NAPTON, J., delivered the opinion of the court.

This was an action of ejectment brought by Montgomery and wife, against Landusky, in the circuit court of Washington county. The following facts were agreed upon on the trial:

James Montgomery, plaintiff, was married on the 3d January, 1827, to Celeste Russ, a lawful heir of Thomas Russ, deceased. Thomas Russ died in the year 1809. On the 24th September, 1842, John Russ, a lawful heir of Thomas Russ, deceased, by deed of bargain and sale, duly made, executed and delivered, for a valuable consideration, conveyed his right and interest in the lot of ground in the declaration mentioned, to the said plaintiff. On the 15th of July, 1825, the recorder of land titles, by virtue of the act of Congress of 26th May, 1824, confirmed to Thomas Russ' legal representatives, a lot in the village of Mine a Breton, being the lot in the declaration mentioned. It is also found that Nancy, otherwise called Narcissa, the lawful wife of said Thomas Russ, and the mother of said Celeste, wife of said plaintiff, died long before the commencement of this suit. On the part of defendant it was shown that said Thomas Russ, deceased, on the 29th September, 1806, conveyed by deed of bargain and sale, the premises in the declaration mentioned to Andrew Henry.

Upon this state of facts, the court gave judgment for the defendant.

It may be assumed that the effect of the fourth section of the act of May 26, 1824, was to invest the villagers of Mine a Breton, with the same title which the inhabitants of the villages enumerated in the act of June 13th, 1812, acquired by that act. No conflicting title having emanated from the government at any time previous to the passage of the act of Congress, of May 26, 1824, it is of no consequence, in the present case to determine at what particular time the title of the claim-ants in Mine a Breton, accrued. We will suppose them to have the full benefit of the act of 13th June, 1812, and that proof of inhabitation or cultivation prior to the 20th December, 1803, would authorize them to claim a certificate of confirmation from the recorder, as though that vil-lage had been one of those enumerated in the act.

The recorder of land titles then, in 1825, issued a certificate to the legal representatives of Thomas Russ, certifying that by virtue of the act of 1812, the lot in controversy was confirmed.

The agreed case speaks of this as a confirmation by the recorder, but we presume the recorder did not attempt to exercise a power which he did not possess, but merely certified that the lot had been confirmed by act of Congress. This certificate of the recorder is frequently termed a confirmation, and has been held by this court in several cases to be *prima facie* evidence of title. But the defendant produces a deed from Thomas Russ to one Andrew Henry, in 1806, thereby showing, that if the plaintiffs claim under Thomas Russ, their ancestor had parted with his title, and consequently showing themselves without a shadow of title.

But it is agreed that the certificate of the recorder in this case, being to the legal representatives of Thomas Russ, enures to the benefit of Thomas Russ' heirs, at the date of its issuance, as the meritorious cause of the donation. The idea appears to be entertained that the recorder's certificate was in fact a grant of the land by the United States to Thomas Russ' legal representatives; that no proof being introduced to show that Thomas Russ himself ever did inhabit or cultivate the lot prior to the 20th Dec'r, 1803, this grant or donation of the recorer en-ures only to the benefit of the person to whom the certificate issued. Such a construction of the powers of the recorder under the act of 1824, would lead to a total perversion of the purposes of that act, and make these certificates of the officers mere instruments of fraud and injus-tice. There is nothing, we apprehend, in the previous decisions of this court to justify such an interpretation of the act. It is true, that Judge McGirk, in the case of Janis' adm'r vs. Gurno, 4 M. R. 458, appeared

to think that the recorder's certificate was *prima facie* evidence, not only of the original confirmation by the act of 1812, but also that the claimant to whom the certificate was granted, was the person entitled to the benifit of such confirmation. This opinion seemed to recognise the power of the recorder to determine derivative titles, and so far has the sanction of the supreme court of the United States in the case of Strother vs. Lucas; but after all, proof that the person to whom the certificate issued, was not the individual, and did not derive any title from the individual, who actually cultivated the lot on the 20th Dec'r, 1803, was always admitted to rebut the *prima facie* case made out by the production of the recorder's certificate. It had been settled, long prior to this decision that the act of 1812, *proprio vigore*, confirmed the lots to the respective claimants. The act of 1824 could not give any additional strength to that confirmation, for it was already a complete statutory grant, but merely provided a mode by which evidence of that grant could be obtained from the government. The certificate of the recorder is merely evidence of a previous grant; and therefore, proof that the person who occupied or cultivated the lot on the 20th Dec., 1803, had prior to the date of the confirmation sold the lot to another, would merely show that the heirs of the occupant were not his legal representatives, *quo ad* the title to this confirmed lot. Even supposing that this certificate had issued to the heirs of Thomas Russ, still I apprehend that if Thomas Russ had sold the lot, the title of his heirs would be defeated. For the recorder does not pretend to give any title; he merely certifies that the act of 1812 has given title—and to whom? to the person who occupied the lot on the 20th Dec., 1803. The recorders's certificate is *prima facie* evidence of this confirmation, but if it be shown that the occupant in 1803 has parted with his title, notwithstanding the recorder issues his certificate to the heir of such occupant, such proof rebuts the *prima facie* case, and strips the heir of every pretence of title.

Judgment affirmed.