THE STATE at Relation and to Use of DUNKLIN COUNTY v. JOHN T. McKAY, T. PAUL KING, R. A. PELTS, Executor of Estate of W. R. ROBERTS, W. M. LLOYD, W. A. SOUTHERN, J. W. KARSTEN, MISSOURI ANN BAILEY, Executrix of Estate of John W. Bailey, and CLYDE WALLACE PRICE, Administratrix of Estate of W. H. Wallace, Appellants.—30 S. W. (2d) 83.

Division One, July 9, 1930.

*Langdon R. Jones, Orville Zimmerman, Ely & Ely* and *John T. McKay* for appellants.

*Hal H. McHaney, Ward & Reeves* and *Jas. V. Billings* for respondent.

LINDSAY, C.—This is a suit against the sureties on the bond given for the use of Dunklin County by the Citizens' Savings Bank of Kennett as one of the county depositories. The other county depositories were the Cotton Exchange Bank and the Bank of Kennett. At the time of the making of the bond, defendant John T. McKay was president, W. S. Jones was cashier, and W. M. Lloyd vice-president, of the Citizens' Savings Bank. The other sureties were directors of said bank. On January 5, 1925, the County Court of Dunklin County made an order of record that the three banks above named be selected as county depositories for a term commencing January 1, 1925, and ending January 1, 1927. Said banks were to pay 2¼ per cent interest on daily balances, and the order provided that each of the three banks be required to execute a bond in the sum of $100,000. The County Court of Dunklin County at that time consisted of C. H. Robards, Presiding Judge, and T. F. Kinsolving and Ed. Allen, Associate Judges. Charles Schultz was County Clerk, and his brother Sam Schultz was his deputy. All three of the banks named had been county depositories prior to the time of the making of the order by the county court. At that time Stokes, the County Treasurer, was carrying his deposits representing the funds of the county, in two accounts, one designated as the General County Fund and the other as the Road Construction Fund, and those accounts were so continued by Davidson, his successor. On June 24, 1925, it being at the April Term, 1925, of the County Court, an order was made reciting that the county depository bond of the Citizens' Savings Bank had been filed.

The Citizens' Savings Bank closed its doors, and was placed in the hands of the Commissioner of Finance of the State, on July 16, 1926. At that time the account of Davidson as County Treasurer showed on deposit, in the General Fund, the sum of $58,777.52, and in the Road Construction fund, $23,443.11. Before the filing of the amended petition, the Deputy Commissioner of Finance in charge of the closed bank, had paid to the County Treasurer a total on the accounts mentioned, of the sum of $19,732.94.

The bond sued on is a typewritten instrument consisting of two sheets. The signatures of the makers are on the second sheet, and under the signatures, appears the following recital: "Approved this 12th day of August, 1925, C. H. Robards, Presiding Judge." The instrument, as originally typewritten, ran for a term expiring sixty-five days after the first day of January, 1926. As sued upon, the typewriting had been changed in the following manner: The type-written words "sixty-five days" had been stricken out by a line drawn through those words with pen and ink; and immediately

above the words so stricken out, there had been written with pen and ink, the words "two years;" and in the year date the figure "5" had been written in pen and ink over the typewritten figure "6." Thus the words and figures of the bond, as typewritten, ran so as to express a term expiring sixty-five days after the first day of January, 1926, and as changed by the alteration with pen and ink, ran so as to express a term expiring two years after the 1st day of January, 1925.

The plaintiff brought an action in the Circuit Court of Dunklin County on August 6, 1926, declaring upon the bond, and charging the same to have been executed in its altered form, that is, for a term expiring two years after the first day of January, 1925. The case went on change of venue to the Cape Girardeau Court of Common Pleas, where the plaintiff took a voluntary nonsuit on July 1, 1927. The plaintiff instituted this suit in the Circuit Court of Dunklin County, on July 7, 1927, and the venue was changed to Scott County.

The petition is in two counts. The first count alleges that all of the interlineations in the bond were made before the signing of the same by the sureties, or, that all of the same were made long after said bond was filed in the office of the County Clerk of Dunklin County and accepted by the County Court of said county; that plaintiff did not know which of said facts was true; but that it verily believed that all erasures and interlineations were made prior to the signing of the bond by the sureties, or long after said bond had been filed in the office of the County Clerk and accepted by the County Court; and for the purpose of the first count alleged that the said erasures, interlineations and changes were made before the signing of said bond by the sureties. By the second count the plaintiff alleged that all of the interlineations and changes were made before the signing of the bond by the sureties, or, that all of said alterations were made after the bond was deposited in the office of the County Clerk and accepted by the County Court; that plaintiff did not know which of said facts was true; but, that either the one or the other was true; and, for the purposes of Count Two, plaintiff alleged that said changes and alterations were made long after said bond was signed and deposited in the office of the County Clerk and accepted by the County Court; and, that if said bond was so changed after it was signed and accepted, it was changed without the knowledge and consent of the County Court, and by some unknown person or persons who had no authority so to do. Thus, the theory of the first count was, that the alterations were made before the signing of the bond; that the bond ran for a term ending two years after the first day of January, 1925, or until January 1, 1927, and thereupon the plaintiff asked recovery of the full amount of the

moneys on hand in the depository bank at the time of its failure, with accrued interest, less the payments made by the Deputy Commissioner. The theory of the second count was, that the bond was given for the period expiring sixty-five days after January 1, 1926, that is, expiring March 6, 1926, and that the alteration was made after the bond was filed, by someone without authority, and thereupon plaintiff asked recovery, with accrued interest, of all moneys deposited with the depository, prior to March 6, 1926, which had never been repaid to plaintiff.

The separate answer of W. S. Jones alleged that he changed the bond sued on, after it was signed by the other sureties and after the time of the acceptance and filing of the bond with the county court, and did so at the instance and suggestion of the county court.

Missouri Ann Bailey, executrix of the estate of John W. Bailey, filed a separate answer in which she denied that John W. Bailey in his lifetime executed the instrument declared upon in the first count of the petition and further denied all the other allegations of the first count of the petition. She next pleaded the death of John W. Bailey, the grant of letters, and pleaded the special Statute of Limitations pertaining to the administration of estates. As to the second count she denied that John W. Bailey executed the bond declared upon in the second count and denied the other allegations in the second count, and as to that count also pleaded the special Statute of Limitations pertaining to the administration of estates. Her answer was verified.

Clyde Wallace Price, as administratrix of W. H. Wallace, deceased, filed her separate answer in all respects like the answer of Missouri Ann Bailey, and her answer was verified. R. A. Pelts, filed separate answer as executor of the last will of W. R. Roberts, deceased. The answer contained general denials as to both counts, allegations that the bond had been altered without the knowledge and consent of W. R. Roberts, that the bond signed by W. R. Roberts had never been accepted by the county court; that W. R. Roberts was of unsound mind and incapable of contracting at the time. This answer was verified.

The separate answer of John T. McKay, W. M. Lloyd, J. W. Karsten, T. Paul King and W. A. Southern was a general denial of all the allegations of plaintiff's petition, and a specific denial that they, or either of them, signed the bond sued on. The answer further denied the validity of the appointment of the Citizens' Savings Bank as a county depository and alleged that the bond was insufficient in form; that the estates of Bailey and Wallace had been negligently released of liability under the bond, and that therefore the answering defendants were released; that the bond had been altered without the knowledge or consent of defendants. In

1084

their answer to the second count they alleged that on the date of the expiration of the bond, to-wit, March 8,. 1926, and for a period of more than thirty days thereafter, the Citizens' Savings Bank was willing to pay over any and all sums held by it as a purported county depository upon demand made by the plaintiff; that no demand was made until the 16th day of July, 1926. It further averred that plaintiff's cause of action should be abated and dismissed for the reason that the petition does not state facts sufficient to constitute a cause of action; that plaintiff has not legal capacity to sue; that several causes of action had been improperly united in the petition and that the action was brought in violation of the provisions of Sections 1155 and 1156 and Section 9585 of the Revised Statutes of 1919. Their answer was also verified.

Replications were filed to these several answers. As to the separate answer of W. S. Jones, the reply was a general denial and an admission that Jones made the changes in the bond in controversy, but a denial that they were made after the bond was signed by the sureties and before it was accepted by the county court; and an allegation that if the bond was changed after it was signed by the sureties, it was changed by Jones without the knowledge or consent of the county court. The reply to the separate answer of Missouri Ann Bailey was a general denial of the new matter set up in that answer, and a specific denial that the cause of action accrued more than one year before the service of process. The reply to the separate answer of Clyde Wallace Price was the same as that filed to the separate answer of Missouri Ann Bailey. The reply to the separate answer of R. A. Pelts was a general denial, an allegation that W. R. Roberts at the time the bond was signed was capable of understanding the act he was performing in signing the bond, and a denial of any knowledge on the part of plaintiff of any alleged incapacity of said Roberts to execute the bond. The reply to the separate answer of the remaining defendants was a general denial of new matters set up in their answer, and a plea of certain facts alleged to constitute the Citizen's Savings Bank *de facto* depository, and to estop the defendant to deny the validity of the appointment, and validity of the bond.

Plaintiff introduced the record entries showing the selection of depositories, and the filing of the bond on June 24, 1925, and testimony as to the genuineness of the signatures, and to the effect that the interlineations were in the handwriting of Jones, and done apparently with the same ink as that used in the signature of Jones for himself and for the bank; also testimony to show the amount of county deposits on July 16, 1926, when the bank closed, and also the amount on March 6, 1926, and made proof of the amount of deposits made after March 6th, and the payments made by the bank there-

after, together with payments made by the Deputy Commissioner of Finance, and of the interest calculations as showing the respective amounts due on the theory of the first count and on the theory of the second count.

At the close of the plaintiff's case, the defendants, sued in a representative capacity, offered their several demurrers to the first count and to the second count, and the other defendants, except W. S. Jones, also offered instructions in the nature of demurrers to the evidence. All of these were overruled.

The living defendants testified. Each of them testified that the interlineations were not on the bond when he signed it. Prior to the time of the making of the bond in suit, the Citizen's Savings Bank, and the persons sureties on this bond, had made a bond to the use of the county in the sum of $50,000, which was not accepted by the county court. This bond for $50,000 was drawn so as to make it run for the period ending sixty-five days after January 1, 1926. Two of the county judges called by the plaintiff in rebuttal, on their cross-examination, testified that the $50,000 bond was not accepted because it was not sufficient in amount. The evidence shows that after the county court refused to accept the bond for $50,000, the bond in question was prepared and Jones procured the signers of the rejected bond to sign the bond in suit. The testimony of the signers of the bond, that is of those living, on their cross-examination, shows them mainly interested in seeing that their names were stricken off the rejected bond. Also their testimony upon cross-examination shows some uncertainty and vagueness as to what they actually observed of the condition of the bond at the time they respectively signed it—in respect to whether the blanks had been filled—whether the names of the sureties had been written into the body of the bond—whether certain others had already signed as sureties at the time they signed—and uncertainty also as to when and from whom they learned there were erasures and interlineations in the bond, or some "suspicious circumstances about" it. The testimony of the county judges is to the effect that in examining the bond in suit after it was filed they were chiefly concerned in seeing that it was in the amount of $100,000, and that all of the members of the board of directors of the bank had signed it. Their testimony shows that none of them gave the bond such an examination at the time it was presented to them, that he could say, or, in fact did undertake to say unequivocally, that the erasures and interlineations had been made at the time the bond was presented. The bonds made by the two other banks as depositories were admitted in evidence. They were drawn for a term ending two years after January 1, 1925.

W. S. Jones testified that after the bond was filed in the office of the county clerk he was called to the county clerk's office by someone in that office; that he went to the clerk's office and had a conversation with Presiding Judge Robards in the presence of another of the judges. Judge Allen. He testified that Judge Robards said they had been checking over the county bonds and that a mistake had been found in the Citizens' Savings Bank bond; that it was suggested that Mr. Bailey had died, but that there would be no harm in his changing the bond; that at the suggestion of Judge Robards he marked out the words "sixty-five days" with pen and ink, and wrote "two years" above the same, and over the typewritten figure "6" wrote the figure "5" with pen and ink; that he used pen and ink found on the desk of the county clerk; that he "scooted" the bond over to Judge Robards and immediately thereafter Judge Robards also took pen and ink and signed his own name as approving the bond, and dated it. There was testimony that there was only one kind of ink in the clerk's office. The testimony of Judge Robards was a specific denial of the testimony of Jones; and the testimony of Judge Allen and Kinsolving, and of the county clerk and his deputy, said by Jones to have been in the office when he made the changes, tended to show that the transaction Jones related did not occur. The bond was not recorded by the clerk until after the endorsement of Judge Robards had been made. As placed of record it was in the changed form.

The plaintiff introduced also in rebuttal John F. Tyrrell as an expert examiner of questioned documents. He testified that he had made an examination of the erasures and interlineations on the bond, and also of the written words "12th of August" and the signature of "C. H. Robards," written by Judge Robards. He gave it as his opinion that the ink used in writing the "12th of August" and "C. H. Robards," was not the same as the ink used in writing "two years" and striking out "sixty-five days" and in writing the figure "5" over the figure "6." This testimony was introduced as contradicting the testimony of Jones, who had said that the writing done by Judge Robards was done with pen and ink in the county clerk's office, immediately after he (Jones) had made the erasures and interlineations, using a pen and ink found in that office, and in view of the other testimony that there was only one kind of ink in use in that office.

The bond has been transmitted to us for our inspection. The names of the first three sureties as they appear in order on the bond are W. S. Jones, John T. McKay and T. Paul King. In addition to the bond there has been also transmitted to us magnified photographic copies made by the witness Tyrrell of the overlapping of lines of the signatures of W. S. Jones and John T. McKay, and the

overlapping of lines in the signature of McKay and T. Paul King. The witness Tyrrell testified that these photographs show that the ink of the signature of Jones is superimposed upon part of the signature of John T. McKay, and that the ink of the signature of King superimposes the loop of the "y" in the signature of McKay; that is, that Jones signed as surety after McKay had signed, and that King signed as surety after McKay had signed. This testimony was admitted because of some conflict or confusion in the testimony of these sureties as to whether the signature of Jones as surety was already upon the bond when they signed it. Since there is no dispute as to the genuineness of the signatures, and no dispute of the fact that all the signatures were on the instrument when it was delivered, we regard the question of the mere order of time in which these men affixed their signatures as immaterial.

The defendant offered a series of instructions at the close of all the evidence, all of which were refused by the court. The court  submitted the case to the jury under instructions given for the plaintiff. By plaintiff's Instruction 1, the court told the jury that the plaintiff had only one cause of action herein, and that if their verdict was for the plaintiff, such verdict could only be upon one count of plaintiff's petition. The jury returned a verdict for the plaintiff upon the first count of the petition.

The defendants, other than W. S. Jones who did not appeal, have assigned numerous errors. The greater number of these assignments arise upon certain groups of refused instructions offered by defendants, by reason of their relation to the subject-matter of certain of the instructions given for the plaintiff and complained of by defendants. Taken in that way, they present certain questions of law which are to be considered and, as far as practicable, in the order presented in defendants' brief.

The first point urged is that the two counts are hopelessly inconsistent, that proof of one totally disproves the other, and therefore, it was error for the court to permit the jury to determine on which count the plaintiff was entitled to recover. This question arises upon instructions numbered 1, 2, 3, 4 and 4A given for plaintiff, and upon the overruling of the motion that plaintiff be required to elect. Plaintiff's Instruction 1 told the jury that the plaintiff had only one cause of action, and that if the verdict was for plaintiff it could be only upon one count. Plaintiff's Instruction 2 told the jury that the first count was upon the bond for $100,000 offered in evidence, in respect to which plaintiff claimed that the erasures and interlineations thereon were made prior to its signing and delivery, and that the plaintiff's claim under the second count was that the erasures and interlineations were made after the said bond was filed and accepted by the county court, and made without the knowledge

and consent of the county court. In that instruction also, the court told the jury that if their findings should be for plaintiff, they could not find for plaintiff under both counts, but that if their findings were for plaintiff, it could only be upon the one count which they found established by the facts and circumstances in the case. By Instruction 3 the court told the jury that if they found the changes designated were made before the bond was signed, delivered and accepted, as sued upon in the first count, then the bond was in force and effect for a period of two years from January 1, 1925; and similarly, the court told the jury that if they found the designated changes were made by defendant Jones after the bond was received, filed and accepted by the county court, then it was a legal bond of the sureties as declared upon in the second count, and in force and effect from its date to sixty-five days after January 1, 1926. Plaintiff's Instruction 4 hypothesizes the facts, which if found, authorized a verdict for the plaintiff under the first count, and plaintiff's Instruction 4A hypothesizes the facts which if found, authorized a verdict for plaintiff under the second count.

Under the claim of fatal inconsistency, and of error in submitting the case under both counts with authority to find for plaintiff under either, but not both, counsel call our attention to Crews v. Wilson. 281 S. W. l. c. 46; Behen v. Transit Co., 186 Mo. l. c. 439; The Southworth Co. v. Lamb, 82 Mo. l. c. 247; Roberts v. Railway Co., 43 Mo. App. l. c. 289; Marx v. Marx, 89 Mo. App. 455; Enterprise Soap Works v. Sayers, 51 Mo. App. l. c. 314. These cases in their facts and consequent issues presented, materially differ from the case at bar.

In Crews v. Wilson, supra, the petition charged violation of the humanitarian rule in that defendant could have stopped the car in time to have avoided striking the decedent, but negligently failed to do so, and it also charged that defendant was guilty of negligence in failing to have the car under control. The two inconsistent charges were not stated in the alternative, and were combined in a single count.

In Behen v. Transit Co., supra, it was alleged that the plaintiff attempted to alight from a car while it was stationary, and the car was negligently and suddenly started; and also charged that the conductor of the car in violation of an ordinance, permitted her to leave the car while it was in motion. Both charges were made as being true, and in one count, and not made alternatively. The fact that the two acts were not pleaded alternatively but both as being true, was referred to in the opinion. The two charges were held to be inconsistent; but we find nothing in the opinion which constitutes a ruling that the two acts could not have been pleaded in the alternative.

Southworth v. Lamb, supra, was a case wherein plaintiff attempted to join in the same count, an action *ex contractu* with an action *ex delicto*.

In Roberts v. Railroad, supra, there were five counts joined in one petition, but not stated in the alternative. The court held no error was committed in refusing to compel the plaintiff to elect. In the course of the opinion the court, after discussing the question of inconsistency and right to require an election, said: "We are not prepared to say, however, that the court's refusal thus to limit the plaintiff at the close of the evidence, would, in any case, amount to prejudicial error under the decisions in this State."

Marx v. Marx, supra, was a count joining an action for divorce with a count for maintenance. It was held that one count sought relief based upon a dissolution of the marriage and the other relief based on the continuance of the marriage. There was not there, and indeed could not well be, the question of alternative pleading.

In Enterprise Soap Works v. Sayers, supra, two causes of action were joined in the petition—one count on the theory of a completed contract of purchase, and the other as an action for rescission of sale. There was no pleading of a fact in the alternative, and the holding was that the two counts were inconsistent. The statement of the case does not seem to disclose the basis for the pleading of a fact in the alternative.

The rulings in the cases mentioned are not authoritative upon the question here presented. The plaintiff's petition is framed in two counts under the provisions of Section 1254, Revised Statutes 1919: "Either party may allege any fact or title alternatively, declaring his belief of one alternative or the other, and his ignorance whether it be the one or the other." Here, the plaintiff pleaded in each count in the alternative the fact determinative of the issue of when the changes were made, and the pleading of such fact carried necessarily the determination, alternatively, of the period of the bond. This is so, because the changes made referred solely to the period of the bond. The paramount question of fact in the case is that of the time when the changes were made, with the subsidiary question, whether made without consent of the county court, if made after the filing of the bond. Both of the alternatives pleaded could not be true, but one or the other could be true, and the plaintiff had a cause of action under the one found to be true. [Hendricks v. Calloway, 211 Mo. 536, 558: Wade v. Douglas, 161 Mo. App. 348, 358; Waechter v. Railroad. 113 Mo. App. 270, 278. See also Brinkman v. Hunter. 73 Mo. 172, 178; Brownell v. Pacific Railroad Co., 47 Mo. 243, 244.] Section 1254, in permitting a fact to be pleaded in the alternative, does not require that the alternatives must be consistent the one with the other, but proceeds on the theory that the one or the other (but not both) may be true, and if so, constitutes

a basis for a cause of action. The amount demanded under the first count is somewhat greater than that demanded under the second count as a consequence of the respective alternative periods of the bond; but, since the fact alternatively pleaded determines the one way or the other not only the validity of the bond, but also the resultant period of the bond, the difference in amounts demanded does not in our view destroy the right to plead the fact alternatively, or require the plaintiff to elect; or, if there be evidence tending to establish both alternatives, affect the right to submit both counts to the jury for its determination in the alternative under proper instructions.

It is urged that plaintiff's Instruction 2 has the vice of being argumentative, and is in no sense a declaration of law, but purports to set out the claims of plaintiff under the pleadings, and is not referable to any evidence, but merely an argument by the court of plaintiff's contentions under the pleadings. We do not regard the instruction as argumentative. It does not refer the jury to the pleadings to ascertain what the issues are. On the contrary, the court by that instruction clearly advised the jury as to what the claim of the plaintiff was under each of the respective counts. In doing so it was not erroneous. [Price v. Metropolitan Street Ry. Co., 220 Mo. 462.] The court immediately followed that by telling the jury if they found for plaintiff, they could not find for the plaintiff upon both counts, but could only find for plaintiff upon one count, the one found established by the facts in the case, if they should so find. In that respect the instruction was not erroneous. The instruction does not assume the claims of the plaintiff to be true, and in view of the alternative character of the claims respectively made under the two counts we think it was pertinent and appropriate for the proper information of the jury.

Complaint is made of plaintiff's Instruction 3 in two respects. This was the instruction which stated the facts, in which if found by the jury, would constitute the bond a legal obligation under the first count; and similarly, stated the facts which, if found, would constitute the bond a legal obligation under the second count. As to the first branch of the instruction the objection is that it submitted to the jury the right to find that the alterations and changes were made before the signing of the bond by the sureties without there being any evidence upon which to predicate such a finding. With this is connected the claim of error in refusing defendant's demurrers offered at the close of the case. The jury had the bond before them for their examination as changed and admitted in evidence. It ran for the period required by the order of the county court, which had been introduced

in evidence, designating the bank as a depository for two years from January 1, 1925, to January 1, 1927. The record introduced in evidence showed the bond was filed June 24, 1925; and the plaintiff's evidence was to the effect that it had never been taken out of the clerk's office and that no one had access to it except the clerk. The bond was recorded by the clerk in its changed condition. There was the testimony of Jones, the bank's cashier, that he made the change in the bond in the presence of the presiding judge, and at his instance, and in the presence of other persons, and the testimony on the part of plaintiff directly contradicting him, or, otherwise, tending to show that no such transaction as he detailed took place. The testimony of the county judges was to the effect that to the best of their recollection the bond was in the condition in which it was when presented to them on June 24th. There was the testimony that all of the signatures to the bond, were genuine; that the interlineations were in the handwriting of Jones who had signed the bond for the bank, and also signed his own name as surety, and that the color of the ink in the signature for the bank and in his own signature and in the interlineation was the same, and the testimony of the expert witness Tyrrell to the effect that the ink used in the interlineation was different from the ink used by the presiding judge in his endorsement upon the bond, although Jones testified he used the ink in the county clerk's office and Judge Robards used ink in that office, while the testimony of the county clerk was, that there was only one kind of ink used in that office—Sanford's Writing Fluid.

Counsel for plaintiff, upon the question of the sufficiency of the evidence to submit the issue whether the change was made before the signing of the bond, insist, that the change appearing on the bond did not cast suspicion upon it, and invoke the presumption which they say the law indulges in such cases, that the changes were made before or at the time of the signing, under the rule announced in Matthews v. Coalter, 9 Mo. 705; Paramore v. Lindsey, 63 Mo. 63; Holten v. Kemp, 81 Mo. 661; Stillwell v. Patton, 108 Mo. 352; Paul v. Leeper, 98 Mo. l. c. 515; Carterville v. Luscombe, 165 Mo. App. 578, and other cases. The foregoing presumption was properly indulged by the trial judge in admitting the bond in evidence upon inspection of the instrument, and upon the evidence in chief by plaintiff, to which reference has heretofore been made. Thence, under the pleadings, and under the evidence for the defendants and the evidence in rebuttal the question of when and by whom the changes were made, was a question for the jury. In this case all the parties to the transaction who were living testified upon the trial, and the deposition of W. R. Roberts, who had died, taken in the first suit, was read in evidence.

There is the further complaint of plaintiff's Instruction 3, that it permitted the jury to find that the bond sued on in its altered form, was accepted by the county court without any evidence upon which to base such a finding. A formal order of acceptance and approval was not essential, under the ruling in Henry County v. Salmon, 201 Mo. 1. c. 153, 154. The sureties intended that the bank should become a county depository, and receive county moneys from the treasurer. The bank did receive such moneys at and after the time when the bond was filed, and acted as a depository at and after that time. There was thus evidence of an actual acceptance of the bond, and the obligation of the sureties would thereby become effective. The question of acceptance was one for the jury.

What has just been said applies to defendant's objection to plaintiff's Instruction 5. By that instruction the court told the jury it appeared from the evidence that no formal order of approval of the bond was made; but that such formal order was unnecessary, and that if by an order of the county court the bond was filed on June 24, 1925, and they found it was accepted by the county court on that date, it became a binding obligation upon the sureties on that date.

The next complaint to be considered, in order, is the refusal of the court to give the defendants' instructions numbered 36 and 38, and the giving of plaintiff's Instruction 7, dealing with the question of the burden of proof. The controversy is waged over plaintiff's Instruction 7, which told the jury that the burden of proof in the case was upon the defendants to show that the interlineations shown on the bond, were made after the execution of the bond and that unless it had been proved to the satisfaction of the jury by the greater weight of all the evidence in the case, that such interlineations were made after the signing of the bond in suit by the sureties thereto, their verdict should be for the plaintiff and against the defendants upon count one of the petition. As heretofore stated, the verdict returned was upon the first count. In its petition under count one the plaintiff set forth the fact of the particular alterations apparent on the bond, and, alleging it did not know whether such alterations were made before or after the execution of the bond, alleged for the purposes of count one that the alterations were made before the signing of the bond, thus alleging execution of the bond in its altered form. The defendants, as to the bond so pleaded by plaintiff in count one, denied the execution of that bond, and verified their answer in accordance with the provisions of Section 1415, Revised Statutes 1919. In the state of the pleadings on count one and for the purposes of that count, the plaintiff affirmed that the alterations were made before the

execution of the bond, and that defendants executed the instrument as it stood in its altered condition, and under the plea of *non est factum* plaintiff had the burden of showing as to count one that the alterations were made before or at the time of the execution of the bond; or, in other words, that the defendants executed the instrument with the described alterations therein. The cases cited by counsel for plaintiff do not sustain the contention they make that under the state of the pleadings in the instant case, the burden of proof was upon defendants. Paramore v. Lindsey, 63 Mo. 63, is the case perhaps most cited on the rule that an alteration apparent upon an instrument, but not suspicious in character, will be presumed to have been made before or at the time of execution of the instrument. That was a suit upon a promissory note duly indorsed and transferred before maturity. The words "after maturity" had been erased. There was no plea of *non est factum,* but the defense set up was that it was altered after defendant signed and delivered it. The instruction in that case told the jury that the law presumed an erasure of such character as that which appeared on the face of the note, was made prior to or at the time of, its execution, and the burden of overcoming the presumption devolved upon the defendants. The instruction was approved. Under the pleadings in the instant case and under the facts and circumstances shown in evidence the burden of proof was upon the plaintiff.

We have held that upon the plaintiff's case in chief, the court, from inspection of the instrument and the testimony then offered, properly admitted the bond in evidence and it was then before the jury for their examination. This was a preliminary matter for the court. When the bond was submitted to the jury, it carried the intrinsic evidence afforded by its face; and, under the plea of *non est factum,* it was before the jury during the remainder of the trial for them to consider in connection with all the explanations offered and circumstances shown. The ruling of the judge in admitting the bond in evidence on the presumption that the alterations did not show anything suspicious, or, that as they appeared, with the other evidence introduced by plaintiff in chief, a prima-facie showing had been made for plaintiff, did not permanently shift the burden of proof from plaintiff to defendants. That burden remained with the plaintiff at the close of the case, and was to be determined by consideration of all the evidence, the bond itself, and all the circumstances shown. The case is within the ruling made in State ex rel. v. Chick, 146 Mo. 645, 657, a suit upon the bond of a treasurer. The change there was plain upon the face of the paper. Its execution was denied under oath. An instruction that placed the burden of proof upon the plaintiff was approved. In that case the court said, 1. c. 658: "There was never any denial or dispute that the names upon the paper were written by the defendants respectively.

The question was, did they execute the bond filed as the foundation of the action? Plaintiff held the affirmative of *that* issue. The position of the parties should not be changed by indulging in presumptions. To say that under the pleadings and under the evidence, as it stood before the jury, it should be presumed that the alteration was made before defendants signed the obligation, would simply shift upon *them,* notwithstanding their plea of *non est factum,* the burden of disproving plaintiff's allegation that they executed the instrument. . . . Defendants had the right to stand upon the very terms of their contract; to deny that the bond sued on was their bond; and to require that its execution be proved. The *onus* was on plaintiff to do so.'' The effect of the plea of *non est factum* was considered in Meredith v. Brock, 17 S. W. (2d) l. c. 352. See also Powell v. Banks, 146 Mo. l. c. 643; Kelly v. Thuey, 143 Mo. l. c. 432; First National Bank v. Ford, 31 A. L. R. 1441. The plaintiff's Instruction 7 was erroneous.

Counsel for plaintiff would avoid the force of the plea of *non est factum;* urging that such plea only applies when the signing and delivery of the instrument sued on is in dispute, and that it was not necessary that the defendant's answers be verified for them to avail themselves of the plea of alteration. Their argument is that the execution here is confessed, and the only point in issue is the question of the time when the changes were made. It is true the genuineness of the signatures is not a matter in dispute, and it is true as said in Wells v. Hobson, 91 Mo. App. 388, that calling an answer a plea of *non est factum* does not make it so; but it was said in that case, at page 388: ''A plea of *non est factum* under the statute in question in order to change the burden of proof must deny the execution of the instrument as it stands.'' It was said in that case that the execution of the note was admitted. The answer here does not admit the execution of the bond. This is not a plea of confession and avoidance, but a denial of the execution of the instrument sued on in the first count.

Error is assigned in the refusal to give defendants' Instruction 21D. This instruction as offered was a peremptory direction to the jury to find for plaintiff and against defendant W. S. Jones, on the first count. W. S. Jones by his answer admitted that he signed the bond sued on in the first count, and alleged that he made the changes apparent on the bond after it was signed by the other sureties, and before the date of its acceptance and approval by the county court and at the instance of the county court; but, he denied the other allegations of the first count, and prayed to be discharged. In his answer to the second count he admitted that he signed the bond sued on in the second count, and alleged that he made the alterations after it was signed by the other defendants and did so at the solicitation of the county court, and alleged that the bond

was never accepted and approved by the county court prior to the making of such alterations, and denied the other allegations of the second count. The claim is that the action of the court in refusing that instruction was prejudicial to the other defendants. However, in view of our holding that the jury had the right under proper instructions to find for the plaintiff under the first, or the second count, we are of the opinion that no prejudicial error was committed against defendants in the refusal of Instruction 21D. The jury had the right to believe or disbelieve the testimony of Jones. The court left it to the jury to find against Jones under either count, instead of peremptorily declaring against him under the first count. We do not think the refusal of the instruction was error against the other defendants materially affecting the merits of the action, and on that ground and under the provision of Section 1513, Revised Statutes 1919, we are not authorized to reverse the judgment for the refusal of said instruction.

Error is assigned in the refusal of defendant's Instruction 25D, and in giving plaintiff's Instruction 9. It is mainly necessary to  consider defendant's refused Instruction 25D which was offered by defendant Missouri Ann Bailey as executrix in charge of the estate of J. W. Bailey, who died July 30, 1925. The objection to the refusal of the one, and the giving of the other, raises the question that there was no acceptance of the bond prior to the death of J. W. Bailey. Counsel refer to the record evidence reciting the filing of the bond on June 24, 1925, and the testimony to the effect that the bond remained with the county clerk in his current files, and unrecorded until August 12, 1925, when the clerk called the attention of the presiding judge to the bond, telling him it had not been O. K.'d, or approved, and the presiding judge thereupon made his endorsement of approval on that date. It is urged that there was no acceptance, and no consummation of the contract prior to the death of J. W. Bailey, and upon that account there could be no liability. Counsel for defendant refer to no authorities dealing specifically with the question of liability of the estate of J. W. Bailey, upon the basis there was no acceptance of the bond, prior to his death. Section 9585, Revised Statutes 1919, provides: "Within ten days after the selection of depositories, it shall be the duty of each successful bidder to execute a bond payable to the county to be approved by the county court and filed in the office of the clerk thereof."

Section 9586 provides: "As soon as such bonds shall have been given and approved, the court shall make an order designating such successful bidders as depositories of said funds." In this case, the bank in question was selected as a depository and required to give bond as such. The bond was presented, and the order of record

made on June 24, 1925, shows the receipt and filing of the bond. The bank and the county officials thence proceeded—acting under the selection. In James & Jewett v. Dixon, 21 Mo. 538, this court, speaking of the bond of an administrator, said at page 539: ''The approval of the bond by the county court was not indispensable to its validity. Wherever the law requires a bond to be approved, that bond will be binding until it is disapproved, unless it is otherwise expressly declared.'' The bond in this case was given for the security of the county, and also for the security and benefit of all members of the public who might receive checks of the county treasurer drawn upon the depository while there were funds of the county on deposit. The duty upon the county court to approve the bond was intended for the security of the county, and the public; and the court's omission to perform that duty did not invalidate the bond. [Jones et al. v. State, 7 Mo. 81; also Henry County v. Salmon, 201 Mo. l. c. 157, 158.] There is nothing in the statute concerning county depositories, which make omission of the county court to approve the bond, destructive of its validity, and especially this ought not to be held where the actual relation of a depository is shown to have existed and continued. In this connection see also State ex rel. v. Morrison, 244 Mo. l. c. 202-204, and cases there cited. Letters of administration of the estate of J. W. Bailey, de'cd., were granted August 7, 1925, and the plaintiff was not barred by the special statute of limitations.

Error is assigned in the refusal to give defendants' instructions numbered 28 to 35 inclusive. Instruction 28 would have told the jury that there was no evidence that W. H. Wallace, deceased, authorized anyone to make any change or alteration in the bond sued on, and that unless the jury believed that at the time Wallace signed the bond, the changes (describing them) had been written in the bond, the verdict should be in favor of defendant Clyde Wallace Price as administrator of said deceased. Instruction 29 would have told the jury there was no evidence that John W. Bailey, deceased, authorized anyone to make any change or alteration in the bond, and that unless the jury found from the evidence that at the time said Bailey signed the bond sued on, the changes (describing them) had been made, the verdict should be in favor of Missouri Ann Bailey as executrix, on the first count of the petition. In thus restricting the finding to the first count, this instruction differs from the one asked in behalf of Clyde Wallace Price as administratrix, and asked for the six other defendants, although there is nothing shown to constitute the basis of distinction between them. Instructions 30 to 35 inclusive, were severally and respectively asked by defendants W. R. Roberts, T. Paul King, John T. McKay, W. M. Lloyd, J. W. Karsten and W. A. Southern, and

were exactly like Instruction 28, asked on behalf of Missouri Ann Bailey. These instructions 28 to 35 are discussed in the briefs in connection with Instruction 12, given for plaintiff, which counsel for plaintiff say covered essentially all that was included in the refused instructions mentioned. From the recitals in the abstract it appears that plaintiff's said Instruction 12 was offered as defendants' Instruction 24, but that the court amended the same and gave it, and it is called here plaintiff's Instruction 12. We give it the distinction over the other multitudinous instructions asked, by setting it out. The words italicized are the words added by the court. As thus modified it is as follows:

"The court instructs the jury that there is no evidence in this cause of any authority, either expressed or implied, by reason of which the defendant W. S. Jones would have the right to have stricken out of the bond sued on in this case the words "sixty-five days" and interlined above the same the words "two years" and written above the typewritten figure "6" in pen and ink the figure "5" *and after signing of the same,* and bind and obligate any of the other defendant sureties on this bond, and you are further instructed that you cannot find a verdict for the plaintiff upon either the first or second counts of the petition by reason of taking into consideration any authority of the said W. S. Jones, to in any manner change the instrument declared upon in this case."

Counsel for defendants admit that Instruction 12 covers a part of what was asked in each of the refused instructions—want of authority of Jones to make changes or alterations—but they urge that Instruction 12 does not cover the remaining parts of the refused instructions and that the remaining parts of the refused instructions presented the defensive theory of the respective defendants, and correctly presented that theory, and that defendants had the right to have their theory submitted by these offered instructions, as the converse of the theory of the plaintiff. We have pointed out the difference between Instruction 28 asked for defendant Clyde Wallace Price and the other mentioned instructions. The instruction asked for Clyde Wallace Price authorized a verdict for her on the whole case, ignoring the question whether the changes made by Jones were made with the knowledge and consent of the county court. Under our holding that plaintiff was entitled to go to the jury on the second count, this instruction was properly refused. As to the others, 29 to 35 inclusive, they are to be considered in connection with plaintiff's Instruction 12, and in some measure with Instruction 37 offered in behalf of all of the defendants except Jones, and refused. Instruction 37 would have told the jury that there appeared a change upon the face of the bond, describing such change, and that if the jury found the change in the bond was made after

signing by any defendant or defendants and without authority to make such change, then all of the defendants who the jury believed signed the instrument before the alteration was made, and did not authorize the alteration, "are released thereby," and the verdict as to such defendants should be in favor of such defendants and against the plaintiff upon the first count of the petition. The defendants were entitled to have their theory, the converse of the theory of plaintiff, submitted to the jury in a direct way. Instruction 12 presented it in a somewhat negative way, but we think the giving of defendants' instructions 28 to 37 inclusive would have tended as much to confuse as to enlighten the jury. Since the case must be retried we will assume that instructions less in number and more direct will be submitted.

Error is assigned in the refusal of requested instructions numbered 42D and 43D, offered by defendant R. A. Pelts, executor in charge of the estate of W. R. Roberts, deceased. Instruction 43D would have told the jury that although it was admitted that W. R. Roberts wrote his name upon the bond, nevertheless the verdict should be for defendant if they found from the evidence that Roberts was told by the cashier of the bank at the time he signed the bond, he was signing a financial statement of the bank that did not obligate him for anything, and believed said statement, and that in his conduct leading up to the signing of the bond he was in the exercise of ordinary care. Instruction 42D would have told the jury that in determining the question of ordinary care on the part of W. R. Roberts, they might take into consideration the ability of Roberts to read and write, and the influence of the cashier, by reason of his long association, and confidence in the cashier to treat him honestly and fairly. The deposition of Roberts taken during the pendency of the former suit, was read in evidence. He testified that he had been a stockholder of the bank since its organization, and a director for about twelve years; that he signed the bond for $50,000 which has been mentioned; that afterward there was another paper brought to him by Jones who said it was a financial statement of the bank; that when he picked up the paper he asked Jones if it bound him in any way, and Jones said, "No," it was "only a financial statement of the bank;" that there were lines on which to sign, and it was his recollection that there were already three or four signatures on the paper. He said: "I never looked at any of the papers that were presented to me and never read them." He made no examination, when he was handed the bond sued on. He testified: "I never paid enough attention to it to tell what it was. All I know is that I just signed it, and that is my signature." He testified that he did not read writing, but said: "I do read print a little bit." He said:

"I can see pretty good." We are of the opinion that the testimony of W. R. Roberts convicts him of negligence, and estops him to deny the execution of the bond. [Gate City National Bank v. Bunton, 296 S. W. 375; First National Bank v. Hall, 129 Mo. App. 286.] The refusal of these instructions was not error.

Under the objection made to the giving of plaintiff's instructions numbered 4 and 4A, defendants refer to their contentions and au· thorities offered in support of the claim that it was error to submit both counts to the jury, for the reason that they were inconsistent, and that there was no evidence on which to submit count one. Those contentions have been already overruled.

Under the head of Points and Authorities defendants say the court erred in giving plaintiff's Instruction 6, and refer to the authorities theretofore cited by them under their claim that the two counts of the petition are inconsistent. We do not see the relevancy of those authorities to Instruction 6, and since the instruction is not further referred to we will not discuss it here.

Complaint is made that the court admitted incompetent and irrelevant evidence over defendant's objection. Under this the only complaint discussed is that grounded on the admission in evidence of the bond of the Cotton Exchange Bank, one of the three depositories. That bond showed that upon it the typewritten words "full and just" had been stricken out, and the word "penal" written in with pen and ink. The defendants had introduced in evidence a certified copy of the bond of the Cotton Exchange Bank, and it was afterward that the plaintiff was permitted to introduce the original bond showing the alteration mentioned. We do not see the relevancy of the bond of the other bank to the issue in this case.

There are yet one or two other matters of complaint but since the same questions will probably not arise upon a retrial we will not prolong this opinion by discussing them. The judgment is reversed and the cause remanded. *Seddon* and *Ellison, CC.,* concur.

PER CURIAM:—The foregoing opinion by LINDSAY, C., is adopted as the opinion of the court. All of the judges concur.