STATE OF MISSOURI at the Relation and to the Use of DUNKLIN COUNTY v. JOHN T. MCKAY, T. PAUL KING, R. A. PELTS, Executor of the Estate of W. R. ROBERTS, M. W. LLOYD, W. A. SOUTHERN, J. W. KARSTEN, MISSOURI ANN BAILEY, Executrix of the Estate of JOHN BAILEY, CLYDE WALLACE PRICE, Administratrix of the Estate of W. H. WALLACE, Appellants.—49 S. W. (2d) 125.

Division One, April 2, 1932.

*Langdon R. Jones, Orville Zimmerman, Bradley & Bradley* and *John T. McKay* for appellants.

34

*Elbert L. Ford, Hal H. McHaney* and *Ward & Reeves* for respondent.

36

HYDE, C.—This is an action on a county depository bond, and is the second appeal in the case. The first appeal was from a judgment for plaintiff, on the first count of its petition, and it is reported in

325 Mo. 1075, 30 S. W. (2d) 83. In that opinion, this court held that plaintiff's evidence was sufficient to make a case for the jury on this first count, but reversed and remanded the case because of instructions, erroneously, placing the burden of proof upon the defendants to show that certain interlineations in the bond were made after it was executed by them. This court held that the burden was on the plaintiff to show that the interlineations were made before the bond was signed. A very full analysis of the pleadings will be found in this court's former opinion. There is no question raised about them on this appeal. The case was, again, tried on exactly the same pleadings and the jury, again, found for the plaintiff upon the first count. The court rendered judgment for the penalty of the bond to be satisfied upon the payment of $77,773.11, the amount of the county deposits, remaining unpaid, at the time of the second trial.

The County Court of Dunklin County, on January 5, 1925, made an order selecting three banks in Kennett as county depositories for a term commencing January 1, 1925, and ending January 1, 1927. The order further provided that the banks were to pay 2 and ¼ per cent interest on daily balances and were to execute bonds in the sum of $100,000 each. The Citizen's Savings Bank was one of the banks named in the order, and on June 24, 1925, its depository bond, in the sum of $100,000, was filed and that fact noted in the records of the county court. The officers and directors of the bank signed the bond as sureties. Some of them have been dischanged in bankruptcy since this action was commenced and suit dismissed as to them. Others have died and action was revived against their executors or administrators. The bank closed July 16, 1926, and has since been in the charge of the Commissioner of Finance for liquidation. He has made some payments to the county which have been credited on the amount due.

Prior to the filing of the $100,000 bond, the bank, its same officers and directors as sureties, had executed a $50,000 bond which they had presented, in February or March, to the county court. The court refused to accept this bond because it was not for the amount required by its order. The bond sued on was then prepared, executed and filed. It was typewritten and covered two pages which were fastened together in a cover of heavier paper. The bond has four different colored writings in it. The body of the bond, on both pages, is written with a typewriter ribbon of one color. It was not clearly shown who wrote it. The blanks were filled in and the interlineations and changes were all made by W. S. Jones, the cashier of the bank. When some of them were made is the question decisive of this case. On the first page, the names of the sureties and the date of the bond is written with a typewriter ribbon of a different color from that used in writing the bond. These blanks were filled in by Jones with the bank's typewriter. On the second page, the date of the bond is

written with a pen. This was also done by Jones and it is written with ink of the same color as the signature of John T. McKay, the president of the bank. No one contends that these blanks were not filled in before the bond was filed. On the first page, in ink of another color, but also in the handwriting of Jones, who signed the bond for the bank and as surety, with ink of the same color, the words "two years" are interlined and the words "sixty-five days" stricken out and the figure "6" in "1926," is changed to 5. As originally written, the first paragraph of the condition of the bond, in which this change appears, read:

"Whereas the above bound Citizens' Saving Bank of Kennett, Missouri, a corporation, was by the county court of Dunklin County, Missouri, by its order duly entered of record on the —— day of ——, 1925, appointed and selected as a county depository from said date, —— day of ————, (these blanks were never filled) and as such will be entrusted with certain sums of money belonging to the funds mentioned by law, for a·term expiring sixty-five days after the 1st day of January, 1926."

On the second page of the bond below the signatures appears: "Approved this 12th day of Aug., 1925. C. H. Robards, Presiding Judge." As hereinafter noted, there was expert testimony that the approval of Judge Robards was written with 'different ink than the writing one the first page of the bond. The evidence was about the same, at the second trial, as that set out in the first opinion in this case. Plaintiff's witnesses were the same but defendants had two additional witnesses. One of them, to some extent, contradicted the testimony of plaintiff's handwriting expert; the other testified to writing the first ($50,000) bond while a deputy in the county clerk's office. The first count of the petition, upon which plaintiff had judgment and from which defendants appeal, was upon the theory that the bond was in its present condition, when signed by defendants. Only one question is presented on this appeal. It is, whether plaintiff's evidence was sufficient to make a case for the jury.

Plaintiff's evidence, in chief, consisted of the order of the court selecting depositories and the record of the filing of the bond sued on; testimony that the signatures on the bond were genuine; and that the interlineation "two years" and that the figure "5" were in the handwriting of defendant Jones, and that these changes were in ink of the same color as the signatures of Jones. After this evidence plaintiff offered the bond itself. It was admitted over defendants' objections. Plaintiff, then, showed the amount of deposits due the county from the bank.

For defendants, several of the officers and directors of the bank, who signed the bond, testified that the words "two years" and the figure "5" were not in the bond when they signed it. The evidence

of some of these sureties, however, is not positive. Defendant Karsten said, in the course of his testimony:

"I think the bonds were made out identically only different in the sum; I don't swear this as I might be mistaken. . . .

"I am positive that the change in this bond by striking out the 'sixty-five days' and putting in 'two years' was done after I signed it. I said in my former testimony that I could be mistaken about this but I don't think I am."

Defendant Southern said:

"That is my signature. At the time I signed it I read it to find out what it was. (Witness' attention is directed to first page, to a line drawn through the words 'sixty-five days' and the insertion of the words 'two years' above, and the figure '5' written over the figure '6'.) I can't see that but when I signed this bond there was part of the first page stricken out and something else written in. (Witness' attention is directed to the words 'two years'.) These words were not written in there. I don't remember whether the 'sixty-five days' was struck out or not, I don't think it was. I think the figure '5' was written over the '6' when I signed it. The 'two years' with pen and ink was not there when I signed this bond, absolutely was not. . . .

"I don't think all of the names of the sureties were written in when I signed it but some might have been there; there were blanks in this bond which hadn't been filled out. The 'two years' wasn't there at that time, but I am not sure about whether the 'sixty-five' was struck out or not, but it doesn't seem to me that it was. It was 1925 when I signed it, same as it is now." This defendant, finally, said that, according to his recollection, the bond recited the term as sixty-five days after the first day of January, 1925, when he signed it.

Defendant Jones, however, testified that the interlineations "two years" and the figure "5" were not in the bond, when the sureties signed it and when he filed it with the court. He said: On the 12th day of August, 1925, he was called to the courthouse and Presiding Judge Robards told him that the bond did not state that it was for a term of two years; that it would be necessary to get a new bond so written; that he called Judge Robards' attention to the fact that Mr. Bailey, one of the sureties, had died and it would be impossible to get a new bond; that Judge Robards then suggested that he make the interlineation and change which appears on the bond; that he did so; and that Judge Robards then dated the approval, on the second page of the bond, and signed his name thereto. Defendants had other evidence tending to show that both bonds were prepared in the county clerk's office and expert testimony to the effect that the ink in the interlineation and in Judge Robards' signature was the same kind of ink. Defendant's expert said, however, that it was impossible to tell

whether or not it was from the same bottle or made by the same manufacturer.

In rebuttal, plaintiff produced the judges of the county court, the county clerk and his deputy, who denied the testimony of Jones that he altered the bond, after it was filed, and who testified that the bond had been at all times, from its filing to the closing of the bank, in the possession of the county clerk; that no one else had access to it; and that, to the best of their knowledge, it was in the same condition as when it was filed. It was further shown that there was only one kind of ink in the county clerk's office. Plaintiff, also, had the testimony of an expert that the ink, used in the interlineation, was different ink from that used in Judge Robards' approval. The jury were shown the differences, pointed out by this expert, by looking at them through his microscope. He also testified to tests made by him with acids. He based his opinion, that different inks were used, on his tests and microscopic examinations.

The opinion of this court, on the former appeal in this case, held that the evidence was sufficient to make a case for the jury and that defendants' demurrers at the close of all the evidence were properly overruled. Defendants, however, contend that the former ruling of this court was wrong and that the question should be reconsidered on this appeal. Defendants base this claim upon two contentions.

First: That the bond was not admissible in evidence because the interlineations, in it, were suspicious; that there was not sufficient explanation, by plaintiff, of when they were made; and that, therefore, there was no evidence that the bond sued on was executed by defendants.

Second: That even though the interlineations were not suspicious and the bond was admissible, upon the presumption that the changes were made prior to its execution, such presumption took flight, upon defendants' positive proof that the interlineations were made after the execution and filing of the bond; and that, therefore, since plaintiff offered nothing, thereafter, to show when the alterations were made, there was still no evidence that the bond sued on was executed by defendants.

Defendants say that the proper rule is that stated in Kircher v. Dunnington, 325 Mo. 355, 29 S. W. (2d) 138, and Meffert v. Lawson, 289 Mo. 337, 233 S. W. 31:

"The ancient rule of evidence as stated and discussed by Mr. Greenleaf (1 Gr. Ev. sec. 564), was that alterations and erasures of written instruments were presumed to have been made at or prior to the time of their execution. The trend of authority is still in favor of the rule as thus declared. However, where an alteration or erasure appears suspicious on its face; for example, where a different ink has been employed at the point of erasure from that elsewher~ used in the instrument, it demands explanation. In the presence

of this, or equally cogent circumstances of a suspicious nature, the law presumes nothing, and the question as to the time when, the person by whom, or the interest for which, the alteration was made are matters of fact to be found by the jury upon proof adduced by the party offering the instrument in evidence.''

The Kircher case was handed down, concurrently, with the opinion on the first appeal in this case. Defendants say that the cases are in conflict; that the Kircher case is correct; and that this court's former opinion, herein, is wrong. We do not, however, think there is conflict between the two cases. The difference is in the facts. In the Kircher case, the only evidence, offered by plaintiff seeking to recover on a note, was the note itself; and an alteration, appearing thereon, was held by this court to be of a character, suspicious on its face. The alteration changed the rate of interest and therefore the amount due on the note. It made the contract different from that shown to have been originally agreed upon. It was not shown who made it, but it plainly appeared to have been made by someone other than the person, who wrote the note, or the maker, who signed the note. It was done with an indelible pencil while the rest of the note was written with ink. In the present case, before the bond was offered, it was shown that the changes were in the handwriting of the cashier of the bank, whose signatures, executing the bond for the bank and for himself, were the first signatures appearing on the bond, and were, apparently, in the same ink as the interlineations. Plaintiff further showed, by the solemn order of the court, entered of record, that the contract, entered into between the parties, was, exactly what the bond, as interlined, stated it to be. The court had before it the fact that the statement in the bond, as interlined, spoke the truth, whereas, as originally typewritten, it stated something which was not the truth. It also stated the term which the law provides for county depositories. [Art. IX, Chap. 85, R. S. 1929, which was then, Art. VIII, Chap. 86, R. S. 1919.] This Article, it may, however, be noted, seems to contemplate that the two-year term provided shall commence in May, rather than calendar years. Plaintiff's showing was sufficient to justify the court in admitting the bond.

As to defendants' second contention: while it is true that, defendants having denied the execution of the bond, the burden of proof was upon plaintiff, yet we think the former opinion of this court was correct in holding that plaintiff's evidence was sufficient to justify the submission of the case to the jury. It is true, that if plaintiff had nothing to stand on except a presumption, arising from a non-suspicious alteration, that the changes in the instrument were made prior to its execution; then, if positive evidence was produced that they were written into the instrument, after its execution, plaintiff would have the burden of coming forward with some evidence, controverting defendants' evidence, in order to make a case for the

jury. [State ex rel. Arndt v. Cox, 327 Mo. 790, 38 S. W. (2d) 1079; Downs v. Horton, 287 Mo. 414, 230 S. W. 103; Guthrie v. Holmes, 272 Mo. 215, 198 S. W. 854.] However, in this case, plaintiff's evidence shows something more than merely a presumption arising from the character of the interlineations themselves. It shows facts and circumstances from which the jury could infer that the interlineations were written into the bond before its execution. These circumstances do not go out of the case as does a mere presumption, but remain to make an issue for the jury to decide by determining whether or not they will believe the facts which may be inferred from plaintiff's evidence or believe defendants' positive testimony The jury may believe the evidence they find worthy of belief. [Gannon v. Laclede Gas Light Co., 145 Mo. 502, 46 S. W. 968; St. Louis Union Trust Co. v. Hill, 283 Mo. 282, 223 S. W. 434; State ex rel. Gas & Electric Service Co. v. Trimble, 307 Mo. 551, 271 S. W. 43; Ford v. St. Louis Transfer Co., 318 Mo. 723, 300 S. W. 769; Morton v. St. L. & S. F. Ry. Co., 323 Mo. 929, 20 S. W. (2d) 34.]

These facts and circumstances, which were shown by plaintiff's original evidence, were that the bond, by the interlineation, was changed to correctly state the contract made and entered of record and to provide the length of term which the law authorized; that they were made by the cashier of the bank with the very ink with which he signed the bank's name and his own to the bond, above any of the other signatures; and that the bank failed only a little more than a year from the time the bond was filed, from which fact it would seem that the longer term was as much to the benefit of defendants, as officers and directors of the bank, as to plaintiff. It is, at least, inferable, that whenever the large amount of county money, on deposit with the bank, was withdrawn, the bank would have had to close. Remaining a county depository, no doubt, meant, for the bank, remaining in existence.

However, the question, of whether or not the evidence made a submissible case, is to be determined from all of the evidence, including any facts or circumstances developed by defendants' evidence favorable to plaintiff. From defendants' evidence, it appeared that the bond was not in the possession of the bank from March until June; that blanks were filled in during that time in different writing than the body of the bond; that it was filed as soon as the last signature was obtained; that the bank had previously been a county depository and its officers and directors and previously made depository bonds; that one of the defendants testified that something was stricken out and something was written in on the first page of the bond when he signed it; and that another defendant testified that it was possible that he could be mistaken in his statement that the change was made after he signed it. Then, from defendants' rebuttal testimony, there was the denial of Jones' testimony by the evidence of the parties he

claimed to have been present and by the tests of the expert. There further appeared the testimony of the persons, in whose custody the bond remained, that it was not out of their possession. There is authority holding "that, although plaintiff is unable to prove the circumstances of the alteration, yet if he proves that the note has never been, to his knowledge, in the possession of anyone but himself or his agent, and that the alterations therein were not made by or with the knowledge or consent of either of them, it is sufficient to entitle him to recover." [2 C. J. 1289, sec. 211.]

We, therefore, hold that plaintiff's evidence was sufficient to require submission of the case to the jury.

The judgment is affirmed. *Ferguson* and *Sturgis, CC.*, concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All of the judges concur.