LUCY E. PREWITT, Appellant, v. GEORGE E. PREWITT et al.

Division One, May 24, 1905.

1. **TRUST FUNDS: Conversion: Limitation.** In applying the Statute of Limitations the court should not confuse the beneficiary's or remainderman's right to establish her title to the property in which the trustee invested the trust fund, with her right to sue as for a conversion of the money.

2. ——: ——: ——: **Fraud.** When a party to whom money is entrusted for a given purpose diverts it from that purpose and secretly uses it in the purchase of land, taking the title in his own name, the injured party, when he discovers the fraud, has two courses open to him: he may sue at law to recover the money so misused, or, if he so elects, he may sue in equity to establish his title as a resulting trust in the land; and it may be that the injured party's right to bring one suit would be barred by limitation, and the other not.

3. ——: ——: ——: **Express Trust.** By will plaintiff's grandfather gave her mother $400 and one-eighth of his estate, to be possessed by her during her natural life and after her death by the lawful heirs of her body. She married while she was yet a minor, and during the coverture, and in 1857, the husband collected the legacy, and invested it in land, taking the title in his own name, and continued in possession until his death in 1900. She died in 1859, leaving, as the only heir of her body, the plaintiff, who married, while she was yet a minor, in 1868 or 1869, and her husband is still living. *Held,* that, when plaintiff's father received the legacy, he became as to it a trustee of an express trust, and that when he used it to buy the land in 1857 and took the title in his own name he became liable to an action for conversion, which action accrued to plaintiff when her right to receive the money accrued, which was on the

death of her mother in 1859; and, although it may be held that plaintiff's cause of action to sue as for conversion may have been barred in three years after she came of age after her mother's death, it does not follow that her action to sue for the land founded on a concealed fraud, was barred.

4. ———: ———: ———: ———: Constructive Notice. The probating of the will and the proceedings in the probate court and the recording of the deed to plaintiff's father, were, although she was a minor of tender years, constructive notice to plaintiff of the express trust, but only of such facts as an examination thereof would reveal. The records in the probate court would show that the trust fund had passed into the hands of her father, who thereby became, as to her interest, a trustee of an express trust. But the record of the deed, which gives no intimation that plaintiff's money had been used in the purchase of the land, the title to which he had taken in his own name, is of no significance as notice to her of her resulting trust in the land. As to that, the Statute of Limitations did not begin to run, nor did her cause of action accrue, until she discovered the fraud.

5. ———: ———: Fraud. When plaintiff's father, to whose wife and the heirs of her body had been bequeathed a certain legacy, received the fund, invested it in land and took the title in his own name, whatever may have been his intentions, he committed an act which in law amounts to a fraud.

6. ———: ———: ———: Limitations: Discovery. The cause of action founded on a fraud does not accrue until the fraud is discovered.

7. ———: ———: ———: Twenty-four years. Where plaintiff's father received money bequeathed to his wife and her bodily heirs, and invested it in land and took the title in his own name, plaintiff, as the only surviving bodily heir of the wife, has a resulting trust in the land; and, if plaintiff, while yet a minor married and continues under coverture, her right to have a court of equity declare a resulting trust to exist in her favor in the land, is not barred for twenty-four years after she discovers the fraud.

8. ———: Resulting Trust: Evidence. Adhering to the rule that evidence to establish a resulting trust in land by parol testimony must be convincing, it is held that the facts that plaintiff's father was at the time of his marriage to her mother in 1850 a young physician without any means, and that, although he soon acquired a good practice and made a good living, he accumulated nothing; that in 1857 he received a legacy of $2079.81 which had been bequeathed to his wife and her bodily heirs, and about that time bought the farm in suit and took the title in his own name, paying $1880 therefor; that this was the only considerable sum of money that ever came into his hands at

Prewitt v. Prewitt.

one time; that before he made the purchase and while he was negotiating the same he said he was going to invest the money in this land, and soon afterwards said he had done so, and frequently in subsequent years told his intimate friends that he had done so; and that when the Civil War was on and rumors of confiscation were in the air, he told an intimate friend that this land was safe from confiscation because it was entailed, that the record in the probate court would so show, are sufficient evidence to show that the trust fund was used to buy the land.

9. ————: ————: **Suit By Married Woman.** A married woman, without joining her husband as plaintiff, can maintain a suit to establish a resulting trust in land, although her interest therein may have existed before the enactment of the statutes securing to a married woman her own property independent of her husband.

Appeal from Pike Circuit Court.—*Hon. David H. Eby,* Judge.

REVERSED AND REMANDED (*with directions*).

*Norton, Avery & Young* and *W. A. Dudley* for appellant.

(1)   The will of William Shaw created a life estate in Lucy Shaw with remainder in plaintiff and Robert C. Prewitt, junior. Riggins v. McClellan, 28 Mo. 23; Munro v. Collins, 95 Mo. 33.   (2)   Robert C. Prewitt, by his marriage to Lucy Shaw, acquired the intervening life estate of Lucy Shaw. And when the property came into his hands it came impressed with the express trust created by the terms of the will. And the forms which the property assumed in his hands did not destroy this trust or set the Statute of Limitations to running so far as this plaintiff was concerned. Hinters v. Hinters, 114 Mo. 26; Boynton v. Miller, 144 Mo. 681; Condit v. Maxwell, 142 Mo. 266; Butler v. Lawson, 72 Mo. 249; Shaw v. Shaw, 86 Mo. 594; 1 Perry on Trusts, secs. 126 and 127; Baumgartner v. Guessfield, 38 Mo. 36.   (3)   J. W. Prewitt, the husband, could not

have brought this suit, nor was it necessary to join him. R. S. 1899, secs. 546 and 4335. Nor does the power conferred upon plaintiff to sue impose upon her the duty to sue in order to avoid the bar of the statute. Real Estate Co. v. Lindell, 142 Mo. 21. (4) Declarations of Dr. Prewitt in disparagement of his title were admissible against him but his declarations in support of his title were not. Whittaker v. Whittaker, 157 Mo. 354; Blount v. Rainey, 43 Mo. App. 644; Diel v. Steger, 56 Mo. App. 535.

*Martin & Woolfolk, Ball & Sparrow* and *A. P. Williams* for respondents.

(1)  As to the character of the testimony offered by plaintiff to establish a resulting trust in the land it consisted entirely of the witnesses' version or understanding of parol admissions made by Dr. Prewitt twenty or twenty-five years ago, and we submit that little or no reliance can be given such evidence however honest and sincere the witness may be. Woodford v. Stephens, 51 Mo. 447; Modrell v. Riddle, 82 Mo. 36; Price v. Krane, 112 Mo. 419; Curd v. Brown, 148 Mo. 92; Fanning v. Doan, 139 Mo. 411; Cornet v. Bertelsmann, 61 Mo. 127; Johnson v. Quarles, 46 Mo. 423; Adams v. Burnes, 96 Mo. 361; Allen v. Logan, 96 Mo. 601; Burdell v. May, 100 Mo. 16; King v. Isley, 116 Mo. 159; Taylor v. Van Schroeder, 107 Mo. 206; Rogers v. Rogers, 87 Mo. 257; Phelpot v. Penn, 91 Mo. 38; Petts v. Weakley, 155 Mo. 136; Brewing Co. v. Dodd, 45 Mo. App. 603; Roy v. Loper, 65 Mo. 474; Kinney v. Murry, 170 Mo. 674; Terester v. Moore, 77 Mo. 662; Davis v. Green, 102 Mo. 184; Mulock v. Mulock, 155 Mo. 441. (2)  Plaintiff's cause of action is barred by the Statute of Limitation. Plaintiff's mother, Lucy Prewitt (Shaw), died in 1858 or 1859. At that time plaintiff was five or six years old. She was born in 1852 or 1853. The disability of minority prevented the statute

from running until that disability was removed by arriving at legal age, 18 years, or 1870 or 1871. The statute, section 4265, gives an additional three years to sue after the removal of the first disability, provided the whole period does not exceed twenty-four years, giving plaintiff the benefit of the three years after she became of age. Then her right to sue ceased after 1874 or 1875. But plaintiff says that before the disability of minority was removed the disability of coverture attached and still continues. This is tacking disabilities which is not allowed. Quick v. Rufe, 164 Mo. 408; Bennett v. May, 100 Mo. 19; Keeting v. Keeting, 20 Mo. 530; Edwards v. Webster, 25 Mo. 384; Ballow v. Larimore, 37 Mo. 387; Campbell v. Gas Co., 84 Mo. 376. So that, notwithstanding plaintiff's marriage, her right of action was barred as early as 1875, more than twenty-five years before this suit was brought. The Statute of Limitations applies with equal force to all forms of action, whether legal or equitable, except technical continuing express trusts. Reed v. Painter, 145 Mo. 341; Sandis v. Saxton, 105 Mo. 486; Shelby Co. v. Bragg, 135 Mo. 296; Hoester v. Sammelmann, 101 Mo. 619; Hunter v. Hunter, 50 Mo. 445; Johnson v. Smith, 27 Mo. 591; Smith v. Record, 52 Mo. 581; Shortridge v. Harding, 34 Mo. App. 354; Garrett v. Conkton, 52 Mo. App. 659; Kelley v. Hurt, 61 Mo. 466; Bradshaw v. Yates, 67 Mo. 232; Spurlock v. Sproule, 72 Mo. 510; John v. Tenton, 88 Mo. 67; Dunn v. Miller, 96 Mo. 337; Vandertone v. Smith, 18 Mo. App. 61; Dobyns v. Rice, 22 Mo. App. 457; Lindell Real Estate Co. v. Lindell, 142 Mo. 79. (3) Under the statute prior to the Married Woman's Act the husband alone could sue for possession. Reed v. Painter, 145 Mo. 354; Bledsoe v. Simons, 53 Mo. 305; Kanaga v. Railroad, 76 Mo. 207; Dyer v. Wittler, 89 Mo. 81; Peck v. Lockridge, 97 Mo. 549; Arnold v. Willis, 128 Mo. 145; Wilson v. Garaghty, 70 Mo. 517. Neither the Married Woman's Act of 1875 nor the amendment of 1889 had the effect of taking

away the husband's right to possession and curtesy which vested in him prior to these acts.   Leile v. Bank, 115 Mo. 184; Leile v. Bank, 141 Mo. 574; Bartlett v. Ball, 142 Mo. 35; Clay v. Mayr, 144 Mo. 376; Winn v. Riley, 151 Mo. 65.   Before the amendment of 1889 giving a married woman the right to sue and be sued, the husband was a necessary party in all actions where the wife's estate was affected.   Clark v. Ins. Co., 52 Mo. 272; Edmonson v. Phillips, 73 Mo. 57; Mertens v. Soewenberg, 69 Mo. 208; Jackman v. Robinson, 64 Mo. 289; Schenck v. Stumpf, 6 Mo. App. 281; Brown v. Dressler, 125 Mo. 593; Hurt v. Cook, 151 Mo. 429; Davis v. Watson, 89 Mo. App. 29; Bartlett v. Roberts, 66 Mo. App. 125.

VALLIANT, J.—This is a suit in equity to establish a resulting trust.   The case made by the plaintiff's evidence is as follows:

The plaintiff's grandfather, William Shaw, died in 1846, leaving a will, by the second clause of which he gave to his daughter, the plaintiff's mother, "Lucy Shaw, the extra sum of four hundred dollars more than her equal portion of my estate in consideration of her tender age and for the purpose of raising and educating her," and by the residuary clause he gave one-eighth of his estate to each of his children then living and a like share *per stirpes* to the children of a deceased daughter, after which the will said: "All of the aforesaid legacies are to be possessed by those to whom they are made during their natural lives and afterwards by the lawful heirs of their bodies, to their only proper use and benefit."   The will was probated and the estate was administered under the jurisdiction of the county court of Pike county, which then had jurisdiction in such matters.

The plaintiff's mother, Lucy Shaw, was one of the children of the testator living at the time of his death, and was entitled under the terms and limitations of the

residuary clause of the will to one-eighth of the estate, in addition to the specific legacy of $400. She was at the time of her father's death a minor, and a guardian was therefore afterwards appointed for her of her person and estate. In 1850 while she was yet a minor she married Dr. Prewitt. She died in 1859 leaving two children, the plaintiff, who was then about four years old, and a son, about eighteen months or two years old. The son died in infancy, shortly after the death of his mother.

Dr. Prewitt after his marriage collected the four hundred dollars specific legacy above named and one-eighth of the residuum of the Shaw estate, in all $2,079-.81, as his wife's share. After these collections were made Dr. Prewitt in 1857 bought the land now in controversy for the sum of $1,880, and took the title in his own name in fee simple by warranty deed. The trial court found, and the evidence sustains the finding, that the purchase money for this land was paid by Dr. Prewitt out of the money he had collected from the Shaw estate.

The plaintiff who bears her mother's name, Lucy, was married in 1868 or 1869, while she was yet a minor, and her husband, Joseph W. Prewitt, is still living, though he is not a party to this suit.

After the death of plaintiff's mother, her father, Dr. Prewitt, married again; he died in 1900, leaving the second wife his widow and three children by that marriage, who are the defendants in this suit.

The land in question is a farm of about 200 acres in Lincoln county. It was the home of Dr. Prewitt from the date of its purchase in 1857 until his death, except for a brief period not definitely stated. In 1868 he separated from his second wife, and he and the plaintiff moved to what the witnesses called the Paxton house in the town of Louisville which was near the farm, leaving the farm in possession of the second wife. After awhile the second wife moved to Vicksburg, Mississippi, and

then Dr. Prewitt and the plaintiff returned to the farm and lived there together until after her marriage and after the birth of one of her children, when she and her husband moved away, the date of which is not given.

The plaintiff's evidence also tended to show that to his intimate friends and friends of the family Dr. Prewitt always said that the land was bought with the money that came from the Shaw estate through the plaintiff's mother and that it was entailed on the plaintiff.

The evidence on the part of the defendants was to the effect that Dr. Prewitt claimed the land as his own and offered it for sale and on one occasion had said that the money he received from the Shaw estate he invested in negroes and they were set free.

This evidence, however, related to claim of ownership after the marriage of the plaintiff and the claim was not made in the presence of the plaintiff.

This suit was begun August 8, 1901.

The trial court held that Dr. Prewitt received the money from the Shaw estate impressed with an express trust created by the Shaw will, that the investing of the trust moneys in the land and taking the title to himself amounted to a conversion of the trust fund and a disavowal of the fiduciary relation he previously held with reference to that fund; that on the death of her mother the plaintiff became entitled to the trust property as absolute owner; that plaintiff was chargeable with knowledge of the provisions of the will and therefore knew that on the death of her mother she was entitled to the trust fund and knew that her father did not then or at any time undertake to so settle with her for the same or convey to her the real estate in which the trust fund was invested, the deed to the land being on record; that the breach of trust occurred in 1857 when the land was bought; that plaintiff's cause of action accrued in 1859 when her mother died; that she being then a minor had three years after coming of age in which to sue, that

period expired in 1874 or 1875, and her right to sue was then barred by the Statute of Limitations. On that finding and that theory the court rendered judgment for the defendants; from that judgment the plaintiff has appealed.

In holding that the plaintiff's right of action accrued in 1859, on the death of her mother, the court confused the right to sue to establish her title to the property with her right to sue as for a conversion of the money. When a party to whom money is entrusted for a given purpose diverts it from that purpose and secretly uses it in the purchase of land, taking the title in his own name, the injured party, when he discovers the fraud, has two courses open to him: he may sue at law to recover the money so misused, or, if he so elect, he may sue in equity to establish his title as a resulting trust in the land; and it may happen that the injured party's right to bring one suit would be barred by limitations and the other not.

The court in this case expressly held that when Dr. Prewitt received this money he became as to it a trustee of an express trust; and that was correct. Then when he used the money to buy the land in 1857 he became liable to an action for conversion, which action accrued to the plaintiff when her right to receive the money accrued, that was, on the death of her mother in 1859. The learned trial judge in his findings charges the plaintiff with notice of the express trust and notice of its breach and to the extent that such notice affects the plaintiff's right to recover the money converted, that finding may be taken as correct. The notice that is there charged to the plaintiff is the constructive notice that the record affords, that is, the record of the will and the proceedings in the probate court.

When the conditions which the law says shall constitute constructive notice are shown to have existed, the presumption of such notice is conclusive; no evidence, however persuasive its character, will be re-

ceived to overthrow or impair the presumption. An application of that rule to the case at bar would charge this plaintiff, though then a child of four or five years of age, with notice in 1859 of what the record showed as to her rights under her grandfather's will. But whilst the law has been compelled from necessity to lay down a very strict artificial rule on this subject, yet it does not charge a party with constructive notice of anything that the record does not show. The record in the probate court would show the plaintiff what her rights were under the will and it would show that the money in which she was interested had passed into the hands of her father who thereby became, as to her interest, a trustee; but that is the extent of the information given in that record. There is nothing there to show to what use her father put the money. In this connection the decree recites that the deed was on record and that the plaintiff is charged with notice of its contents. But the deed gives no intimation that the plaintiff's money was used in that purchase, and, therefore, its record is of no significance in this connection. Indeed the defendants' position that the plaintiff had notice that her money had been invested in this land, is inconsistent with the main theory of their defense, which is that it was not so invested at all. It is only by testimony outside the record that the plaintiff has been able to establish the fact.

When the plaintiff's father invested her money in this land and took the title in his own name, whatever his intention in fact may have been, or whatever his opinion as to his rights, he committed an act which amounts in law to a fraud. The learned counsel for respondents in their brief argue, with a good show of reason, that the probate court, the executors, the guardian and Dr. Prewitt all treated the legacy as if they judged it to belong absolutely to the testator's daughter. If Dr. Prewitt acted under that opinion it acquits him of any intention to do wrong, but does not

change the legal effect of the act or make it any the less a fraud.

In such case the cause of action is not deemed to have accrued, within the meaning of the Statute of Limitations, until the fraud has been discovered. [Hunter v. Hunter, 50 Mo. 445.]

In 19 Am. and Eng. Ency. Law (2 Ed.), 243, it is said: "It has always been the rule in equity that the defendant's fraudulent concealment of a cause of action will postpone the running of the statute until such time as the plaintiff discovers the fraud; the defendant having, by his own wrongdoing, prevented the plaintiff from instituting his suit, will not be permitted to take advantage of his own wrong by setting up the statute as a defense. This rule is provided for by statute in many of the States, but exists in equity courts independent of statutory provision."

There is no evidence in this record that would justify the conclusion that the plaintiff had notice until long after her marriage that her money had been invested in this land. In fact the evidence, particularly that of Mr. Nash, who was an intimate friend of Dr. Prewitt, indicated that Dr. Prewitt, although he always acknowledged to him that the land was purchased with the money that came under the Shaw will and frequently said that he desired his daughter, the plaintiff, to have what was her own, yet he gave Mr. Nash to understand that he preferred she should not know it lest she and her husband might give him trouble. True, one of plaintiff's witnesses testified that when plaintiff was a little girl he called on Dr. Prewitt and found the Doctor and his daughter talking, and afterwards the Doctor told witnesses what he was talking about, which was that his daughter's mother's money had paid for the land and it was her property. The witnesses did not hear the conversation between the father and the daughter and was not sure that the daughter was present when the Doctor was purporting to tell him what he

had told her; he said she might have been about the room, she was passing around the house. A witness for defendants testified that the plaintiff told him twelve or fifteen years ago (which would be 1884 or 1887) that her uncle William Shaw had told her that the house on the place was built with her mother's money; the witness testified that he afterwards mentioned this to Dr. Prewitt and he said it was not true, her mother's money was lost in negroes.

There was some effort on the part of defendants to show that Dr. Prewitt had purchased negroes, but the effort failed; if he laid out any money in that way it was a trifling sum.

The Statute of Limitations did not begin to run against the plaintiff's right to sue in equity to establish a resulting trust in this land until she had notice of the fraud.

If when she received notice she was under the disability of coverture and that disability has continued to the present time, the Statute of Limitations allowed her twenty-four years in which to sue. There is no evidence to justify a finding that this plaintiff had such notice within that period before she brought this suit and the learned chancellor made no such finding, but based his judgment on the theory that the plaintiff's cause of action arose at the death of her mother in 1859, when she was a minor, and that her claim was barred three years after she came of age, which, as we have seen, may have been correct as to a right to sue for the money, but not as to her right to maintain this suit founded on a concealed fraud.

It is earnestly argued in behalf of the defendants that the evidence was not of a character sufficient to justify the finding that the trust money went into this land; it is characterized in the brief for respondents as loose statements, and we are referred to former decisions of this court in which such statements have been held not satisfactory evidence. We think the testimony

in this case was very convincing and that the statements of Dr. Prewitt coincide with the corroborating facts. He was at the time of his marriage a young physician without any means and though he soon acquired a good practice and made a good living, yet he accumulated nothing. This was the only considerable sum of money so far as appears that ever came into his hands at one time and the purchase was a cash transaction for $1,880.00. Before he made the purchase and while he was negotiating the same, he said that he was going to invest this money in this land and soon afterwards he said that he had done so, and frequently during his life he told his intimate friends that he had done so. When the Civil War was on and rumors of confiscation were in the air he told his intimate friend, Mr. Nash, that this land was safe from confiscation because it was entailed; that the record in the probate court would show it. We are satisfied that the learned chancellor was correct in his finding on this point and that his only error was in the application of the Statute of Limitations.

When the wife of Dr. Prewitt died in 1859 her two children, the plaintiff and the infant Robert, were in equity entitled as remaindermen to the land, each an undivided half, and when Robert died the plaintiff and Dr. Prewitt as his heir at law inherited his share; the plaintiff then being entitled to one-half and one-fourth, and Dr. Prewitt to one-fourth, and so it was when Dr. Prewitt died. The plaintiff is therefore in this proceeding entitled to a decree vesting an undivided three-fourths of the land in her, and also her interest as an heir of her father, in the remaining one-fourth which latter is subject to the administration of her father's estate.

The point is made that since the plaintiff's interest in this land existed before the statutes of this State securing to a married woman her own property independent of her husband, the plaintiff's husband is alone

entitled to sue for the possession of her land and as he is not a party to this suit the plaintiff cannot recover.

If the defendants' construction of the Married Woman's statutes in this respect is correct and if this were an action at law for possession only, the point would be well made, but this is not that kind of an action; whatever right the plaintiff's husband may have to the possession of the land after the title is well vested in her, as to which we have no occasion now to express any opinion, the plaintiff has a right to sue alone in equity to establish her title as in this case.

The judgment is reversed and the cause remanded to the circuit court of Pike county with directions to enter judgment for the plaintiff in accordance with the views above expressed.

All concur.