Joseph M. Little, Appellant, v. Robert Parke Mettee, Birdie May Mettee and Harriett W. Aydelotte.—93 S. W. (2d) 1000.

Division One, April 23, 1936.

*James P. Aylward, Perry W. Seaton* and *Arthur N. Adams* for appellant.

*A. N. Gossett* and *Harvey E. Hartz* for respondents.

1226

FERGUSON, C.—This is a suit in equity to establish and enforce what plaintiff denominates as a resulting trust in a one-fourth interest in certain real estate, situate in Jackson County, Missouri, and particularly described in the bill. The suit was filed and heard in the Circuit Court of Jackson County and the finding and decree of the chancellor being for defendants the plaintiff has appealed. We can better approach and develop the determinative issues by first stating the facts in evidence.

Joseph M. Little, the plaintiff, and Robert Parke Mettee, Birdie May Mettee and Harriett W. Aydelotte, formerly Harriett W. Mettee, defendants, are grandchildren of Harriett W. Wilson, deceased, and the children of Mary Wilson Little, also deceased, who was a daughter of Harriett W. Wilson. The mother of plaintiff and defendants was twice married. Her first marriage was with a man named Mettee and the three defendants are the children born of that marriage; the second marriage was with a man named Little and the plaintiff, appellant here, is the only child born of that marriage. On December 9, 1892, Harriett W. Wilson, the grandmother of plaintiff and defendants, executed a will. At that time her husband, Robert T. Wilson, and two daughters, Kate M. Drury and Mary W. Little, formerly Mary W. Mettee, the mother of plaintiff and defendants, were living. The three children of Mrs. Drury and plaintiff and defendants, the children of Mrs. Little formerly Mettee, were all of the grandchildren of Harriett W. Wilson. By her will Harriett W. Wilson devised and bequeathed her property and estate to trustees therein named and directed that an annuity for a

certain period be paid to her daughter Kate M. Drury with the proviso that it should cease in the event of her remarriage. She bequeathed the sum of $1000 to her daughter Mary W. Little, the mother of plaintiff and defendants, and the sum of $1000 to each of her grandchildren; plaintiff, defendants and the Drury children. Robert Wilson Drury, son of her daughter Kate M. Drury was the youngest of the Drury children. As to the term or period of the trust the will provided that when the minor grandson Robert Wilson Drury reached the age of majority the trustees should partition and distribute the "whole of my property, not otherwise disposed of, . . . to the children of my daughter, Kate M. Drury, and the children of my daughter, Mary W. Little, born of her marriage with Mettee who are surviving at the time of said partition and distribution, the said children of both daughters aforesaid to receive equal parts, share and share alike." This paragraph of the will also provided for the termination of the trust in the event the grandson, Robert Wilson Drury died before attaining majority but as that contingency did not occur it is not necessary to set out the provisions made therefor. It will be noted that under this will of December 9, 1892, the plaintiff herein, Joseph M. Little; only child born of his mother's second marriage, would receive only a legacy of $1000. He would not share in the partition or distribution of the property to be made by the trustees when Robert Wilson Drury attained majority. In that partition the children of Kate M. Drury and the children of Mary W. Little, plaintiff's mother, "born of her marriage with Mettee," who were living at the time of the partition were to share equally in the property but plaintiff was excluded from the partition by the provision limiting the beneficiaries to children of his mother "born of her marriage with Mettee." James F. Mister, an attorney who wrote the will, and Robert T. Wilson, testatrix's husband, were named as both executors and trustees. On February 10, 1897, her daughter Kate M. Drury having died in the meantime, Harriett W. Wilson executed a codicil to her will. This codicil was also written by testatrix's attorney James F. Mister and he and Robert T. Wilson her husband, the executors and trustees named in the will, were present in addition to the subscribing witnesses when she executed the codicil. Both the original will and the codicil were written by Attorney Mister in longhand and with ink. The codicil notes the change in the situation resulting from the death of the daughter Kate M. Drury and the marriage of Kate M. Drury's two daughters since the execution of the original will. By the first paragraph of the codicil a specific bequest of certain personal property is made "to the children of my daughter, Kate M. Drury (now deceased)" naming them. The second paragraph directs the trustees "to pay for the benefit or behalf of Rob-

1228

ert Wilson Drury." (son of Kate M. Drury, the deceased daughter) "and Joseph Little," this plaintiff, "during their minority such further sums as to my said trustees shall seem necessary and right in their best judgment and discretion." The third paragraph of the codicil increases "the bequest of my daughter Mary W. Little," plaintiff's mother, "from one thousand dollars to two thousand dollars; and also that to my granddaughter, Birdie Mettee," one of the defendants herein and plaintiff's half sister, "from one thousand dollars to two thousand dollars, because of kindness, attention and services rendered me during periods of sickness." The fourth paragraph makes two specific bequests of $1000 each to two relatives. The source of this suit is found in the next or fifth paragraph of the codicil. As first or originally written by Attorney Mister this paragraph read: "Because of special provisions herein made, and of the death of my daughter Kate M. Drury; and of the marriage of her daughters, I revoke the provisions made for her children in my will upon final distribution of my estate, and direct the whole of it to go to the children of my daughter, Mary W. Little, born of her marriage with Mettee *and of her present marriage with Little.*" (Italics ours.) Whereas the original will excluded Joseph M. Little, the plaintiff from sharing in the final partition or distribution of the estate when made by the trustees this fifth paragraph of the codicil as originally written permits him to share equally with his half brother and two half sisters, each taking a one-fourth interest. But when presented for probate, approximately two months after the execution of the codicil, a continuous, heavy, black ink line had been drawn through the words we have italicized, supra: "and of her present marriage with Little." If those words be stricken from the fifth paragraph of the codicil, and treated as of no effect, it is readily apparent that plaintiff would not be entitled to share in the final distribution of the estate when made by the trustees and that the defendants, the three children born of the marriage of plaintiff's mother to Mettee, would take the property, each an undivided one-third interest therein. This suit was filed August 28, 1931, and tried in July, 1932. We digress here from our narration of events to note that Attorney Mister who wrote both the original will and the codicil and was present at the execution of each, retained the instrument in his custody until the death of the testatrix (according to the evidence on the part of the defendants), presented it for probate and served as an executor and trustee thereunder, died long prior to the commencement of this suit; that testatrix's husband died approximately a year after her death; and that none of the witnesses who attested the codicil could be produced at the trial of this suit. Therefore there was no direct evidence or explanation as to when the alteration was made in the

codicil and the line drawn through the words, "and of her present marriage with Little."

As will later be more fully stated this suit arises out of plaintiff's claim that under the provisions of the fifth paragraph of the codicil he was entitled to share in the property at the termination of the trust to the extent of a one-fourth interest therein; the property involved in this suit being real estate situate in Jackson County which his grandmother owned at the time of her death. On March 29, 1897, less than two months after the execution of the codicil, Harriett W. Wilson died. The will and codicil were presented by testatrix's husband and her attorney, Mister, named therein both as executors and trustees, to the Probate Court of Jackson County for probate and was by that court admitted to probate on April 19, 1897. The proof made by the attesting witnesses of the will was conventional as was the proof on the part of the attesting witnesses to the codicil. The testimony of the subscribing witnesses to the codicil was merely "that the said Harriett W. Wilson, the testatrix, subscribed the same in their presence, and published the said codicil to said will or instrument of writing, as a codicil to her last will; that she, the testatrix, was, at the time of publishing said codicil to her said will, of sound mind, and more than twenty-one years of age and that they, the said deponents, attested the said codicil to said will as witnesses thereto, at the request of said testatrix by subscribing their names to the same in the presence of the said testatrix and in the presence of each other." The judgment of the probate court states that the court "having examined the instrument of writing purporting to be the last will and testament of Harriett W. Wilson, deceased, including codicil . . . and having heard the testimony" of the subscribing witnesses to both the will and the codicil "in relation to the execution of same, does declare and adjudge said instrument of writing, including codicil, to be the last will and testament of Harriett W. Wilson, deceased, . . . and orders the same to be recorded as such." The clerk of the probate court subsequently enrolled the will and codicil upon the record of the probate court but in doing so omitted the words, "and of her present marriage with Little" in the codicil through which the ink line had been drawn. Thereafter a certified copy of the will and codicil with the same omission was issued by the clerk of the probate court and same was recorded in the office of the re corder of deeds of Jackson County. The clerk of the probate court also delivered a certified copy of the will and codicil wherein the same omission was made to the executors and trustees. This copy was used and followed in administering the estate and later the trust created by the will and in distributing the property at the termination of the period of the trust. The original will and codicil together with the testimony of the attesting witnesses to both is, and

has since it was presented for probate been, on file in the office of the clerk of the Probate Court of Jackson County.

At the time of his grandmother's death and the probate of the will plaintiff, Little, was a minor ten years of age. Testatrix's surviving husband, Robert T. Wilson, one of the executors and trustees named in the will died in February, 1898, approximately a year after the death of his wife. The surviving executor and trustee, testatrix's attorney, James F. Mister continued the administration of the estate and thereafter the trust created by the will. The estate having been fully administered and the period of the trust having terminated, the surviving trustee Mister and one J. C. Rieger, who had been duly appointed substitute trustee by the Circuit Court of Jackson County, in the place of Robert I. Wilson, deceased, as such trustees under the trust created by the will and pursuant to the provisions of the fifth paragraph of the codicil as same appeared in the record of the will and codicil in the office of the clerk of the probate court and that of the recorder of deeds and also in all the certified copies of the will and codicil issued out of the office of the clerk of the Probate Court including that delivered to the executors and trustees, delivered and conveyed to the defendants, who were "the children of Mary W. Little born of her marriage with Mettee," all of the remainder and residue of the estate and trust property including the real estate situate in Jackson County, Missouri, which is described in plaintiff's petition or bill. This real estate was conveyed to the defendants by a trustee's deed dated March 9, 1905. This deed was on the date thereof filed for record in the office of the recorder of deeds of Jackson County and placed of record. Defendants immediately went into possession of all the real estate conveyed to them by said deed. On August 7, 1905, the defendants partitioned among themselves the lands conveyed to them by the trustee's deeds. This partition deed was filed for record in Jackson County on August 9, 1905. In this partition Birdie May Mettee and Robert Parke Mettee received the lands described in the petition as tenants in common and since said date these two defendants have been in the continuous, open, notorious and exclusive possession of all said real estate, paid the taxes and made improvements thereon and at all times have claimed to be the owners thereof and to have title thereto each claiming to be owner of and to have title to an undivided one-half interest. Plaintiff attained his majority April 23, 1907, approximately two years after the trustees conveyed the land involved to defendants. Plaintiff claims that he never saw the original will and codicil and did not discover, and had no knowledge, that a provision had originally been written in the codicil making him a beneficiary in the trust created by the will and a line afterwards drawn through same until May 27, 1931,

when he had occasion to examine the original will and codicil on file in the office of the clerk of the Probate Court of Jackson County, being more than twenty-four years after plaintiff attained his majority, thirty-four years after the probate of the will and twenty-six years after defendants went into possession of the land under the trustee's deed during all of which time they had been and continued in the open, notorious, and exclusive possession of all the land claiming ownership of and title thereto.

Defendants' evidence tended to show that in 1906, when plaintiff was nineteen or twenty years of age, and twenty-five years before this suit was filed, he read and examined the original will and codicil at the office of the clerk of the Probate Court of Jackson County. One L. G. Ferrell, testified that in 1906 he was "practicing law in Olathe, Kansas;" that he had known plaintiff "since he was a school boy in high school;" that "for a time" plaintiff "was with me in my office reading law, making collections, preparing himself to be a lawyer;" that in 1906 he went with plaintiff "to the courthouse in Kansas City . . . to examine his (plaintiff's) grandmother's will;" that he "was not at any time attorney for" plaintiff but went with plaintiff on that occasion "just as a friend;" that they examined the "original will;" that he "noticed at that time that there was a line scratched out in the codicil and the same condition exists today;" that "I cannot remember that Joe and I talked about the fact that his name had been scratched out but I noticed it was gone; that was the condition of the codicil at that time;" that plaintiff "read the will himself and also read the codicil, read them both all the way through;" and that "Mr. Little and I discussed the provisions in the will after reading it all over." Plaintiff denied that Ferrell ever at any time accompanied him to the courthouse in Kansas City or that they ever made an examination of the will or that he had ever seen the original will until in May, 1931.

■ It is conceded the original will and codicil on file in the office of the clerk of the probate court did not constitute constructive notice of the alteration in the fifth paragraph of the codicil and the defendants' testimony was that they had never seen the original will and codicil prior to the filing of this suit; that prior thereto they had no knowledge whatsoever of the provision in the fifth paragraph of the codicil through which the ink line was drawn nor of any alteration therein; that they had seen only a certified copy of the will and codicil issued out of the office of the clerk of the probate court which as we have noted entirely omitted that provision of the codicil; and that they at all times understood and believed themselves to be the sole beneficiaries named in the trust created by the will as appeared from such certified copies of the will and codicil.

Further the evidence on the part of the defendants was that their grandmother's attorney, Mister, who wrote the will and codicil had and kept same in his custody from and after the execution thereof until he filed it in the probate court for probate. Presumably as tending to show knowledge of the existence of the alteration or even participation therein on the part of one of the defendants, Birdie May Mettee, plaintiff put in evidence the deposition of Kate Drury Youngblood, a daughter of Kate Wilson Drury, deceased, and a granddaughter of Harriett W. Wilson, deceased. The deposition was taken in May, 1932, and the witness purported to relate conversations and events which had allegedly occurred from thirty-five to forty years or more prior thereto. The testimony is confusing, vague, uncertain and contradictory. The witness testified on direct examination, that at the time of her grandmother's death in 1897 she (the witness) was married, "lived at Liberty, Missouri;" and was the mother of two children; that prior to her marriage she lived for "possibly a year at" her "grandmother's home;" that her grandmother had a "small walnut cabinet that fastened in the corner of the room . . . possibly a little over a foot in length. It was always kept locked;" that the grandmother told her that she kept "her valuable papers . . . my will, notes, schoolhouse bonds, courthouse bonds everything in the cabinet" (note: the inventory of the grandmother's estate did not show that she owned school or courthouse bonds; however it appears that the inventory of the grandfather's estate showed that he owned such bonds;) "that shortly after" the grandmother's death she was in her grandmother's home "but did not see the cabinet; it wasn't there . . . I asked Birdie May Mettee where the cabinet was and she said she had taken it home. Birdie May Mettee said grandmother's will was in the cabinet and her valuable papers. I told her she had no business with them they belong to Major Mister, he was the administrator. She then said: 'that is where I am going to give them to:'" On cross-examination the witness first stated that "the cabinet was never returned" to the house "after my grandmother's death" then that "grandfather lived in the house for a year afterward . . . the cabinet was there while grandfather was . . . I stated in my (direct) examination that the cabinet was taken away but I was thinking grandpa died before grandmother. The cabinet was there after grandmother's death and stayed there until after grandfather's death. It was taken away when grandfather died. It was after the last death that the cabinet was taken away by Birdie May Mettee and that was when I had this conversation with her and she said she was going to turn the papers over to Major Mister." On redirect examination it is difficult to determine just the time and connection of the purported conversation with Birdie May Mettee which the

witness then related. She seems to revert to and reiterate her statement made on direct examination, retracted and contradicted on cross-examination, that the purported conversation with Birdie May Mettee occurred immediately after the grandmother's death and relates further conversation which she seemingly says occurred at that time stating that she and Birdie May Mettee "were in a room alone . . . before the will had been probated and before I knew what the will was . . . all I knew . . . was as it came out in the paper . . . and I said something to Birdie about it . . . that I thought grandmother should have left it equally divided between the grandchildren. She said: 'You know that is not right I should have more than rest of you. I was here taking care of grandmother' . . . . that was when I asked her where the cabinet was." Continuing then on the redirect examination the witness, evidently referring to this same purported conversation, added the statement: "I asked her where the will was, and she said she had it and I said: 'What right have you with it.' I told her Major Mister should have had it. She says, 'that is where I am going to take it.'" While the witness on direct and redirect examination claimed the purported conversation occurred "shortly after the grandmother's death and before the will was offered for probate and even that Birdie May Mettee said she then had the cabinet and the will in her possession but intended to deliver the will to Attorney Mister it does not appear nor does the witness explain how the contents of the will and the manner in which it disposed of the property "came out in the paper," the source of her information, or how she at that time knew that Mister was named, as she termed it, "administrator." We have heretofore noted that the defendant's positive and unequivocal testimony was, and the other evidence on their part tended to show, that they never saw the original will and codicil until after this suit was brought and had no knowledge whatsoever of the provision in the fifth paragraph of the codicil relating to plaintiff and the alteration therein and the chancellor might well have so found and believed. In Norton v. Norton (Mo.), 43 S. W. (2d) 1024, we reiterated our oft repeated rulings as to the quality and degree of proof required to establish the facts or conditions giving rise to a resulting trust. We there said: "It is well settled that to establish an implied trust, whether it be a resulting or a constructive trust, 'an extraordinary degree of proof is required.' [Ambruster v. Ambruster, 326 Mo. 51, 31 S. W. (2d) 28, 34.] The rule is variously stated in the cases as, that to establish such trusts 'the evidence . . . must be so cogent, clear, unequivocal, and positive as to banish doubt from the mind of the chancellor,' LaRue v. LaRue, 317 Mo. 207, 294 S. W. 723, 726; the 'evidence must be clear and convincing so as

to leave no room for reasonable doubt.' [Gaugh v. Gaugh, 321 Mo. 414, 11 S. W. (2d) 729.] The proof must be 'so clear, so unequivocal, so cogent, and impelling as to exclude every reasonable doubt from the chancellor's mind,' Bunel v. Nester, 203 Mo. 429, 101 S. W. 69, 78; and a preponderance of the evidence is not sufficient; the evidence must be so 'unquestionable in its character, so clear, cogent, and convincing that no reasonable doubt can be entertained of its truth.' [Russell v. Sharp, 192 Mo. 270, 91 S. W. 134, 138, 111 Am. St. Rep. 496.]'' The foregoing testimony of the lone witness hardly satisfies the standard of proof required in this kind of a case. The most plaintiff claims is that it ''creates a strong suspicion'' against defendant Birdie May Mettee but that does not suffice. We must therefore rule the case on the theory that defendants did not have knowledge, either actual or constructive, of the provision in the original codicil relating to plaintiff and the alteration thereof.

In the original will the children of Mary W. Little are named. The name of defendant Birdie May Mettee was originally written ''Birdie Mettee May Mettee'' but an ink line was drawn through the first ''Mettee.'' Though the erasure is clearly an immaterial one nevertheless Attorney Mister carefully noted it and made this notation at the end of the will and above the signature: ''The word Mettee on the 26th line, 4th page erased before signature.'' No notation however appears in the codicil concerning the ink line drawn through the words ''and of her present marriage with Little'' in the fifth paragraph. The plaintiff also had expert testimony, and a test or demonstration was made at the trial, that this ink alteration or erasure in the fifth paragraph of the codicil was in a different ink and not that used in writing the codicil or by the testatrix in writing her signature.

Plaintiff's theory is that he was a beneficiary in the trust created by the will and that under the provisions of the fifth paragraph of the codicil he became, at the termination of the trust, the owner of an undivided one-fourth interest in the land involved in this suit; that when the trustees conveyed the land to defendants they took and have since held title to his undivided one-fourth interest as trustees in a resulting trust; that Statutes of Limitation did not begin to run until such time as he discovered the facts and learned of the existence of the resulting trust and that he claims was not until May, 1931; and by this suit he seeks a decree of the court declaring defendants to be trustees in a resulting trust'' of the said property for the plaintiff to the extent of an undivided one-fourth interest.'' Defendants deny that plaintiff was one of the beneficiaries in the trust created by the will and say that by the probate of the will and codicil it was necessarily determined that the alteration, erasure or striking out of the provision making plaintiff a

beneficiary was made prior to the execution of the will and that this suit is by indirection an attempt to set aside the judgment of probate and therefore a collateral attack on that judgment which cannot properly be maintained. The two answering defendants, Robert Parke Mettee and Birdie May Mettee also set up a claim of adverse possession, plead Statutes of Limitation and ask a decree of the court "quieting and establishing" title in them, and that each be decreed the owner of "the absolute fee simple title and estate in and to an undivided half interest in and to said lands and every part thereof." As stated the chancellor found for defendants and entered a decree declaring that plaintiff has no "title, interest, right, estate, or claim whatsoever against said lands or any of same" and that "the ownership, title and estate of said Robert Parke Mettee and Birdie May Mettee in and to said lands and every part of same, is determined and established to be forever quieted in said defendants . . . as the absolute owners . . . seized as tenants in common of the entire, absolute fee simple estate" in said lands.

An alteration or erasure in a will which if given effect would change the disposition of property as originally made must necessarily be treated as a material alteration. Plaintiff conceded that ordinarily a material alteration of, or interlineation in, a written instrument, in the absence of proof to the contrary, is presumed to have been made before the execution of the instrument in which it appears. "Such presumption seems to have had its origin in the fact that material alterations modifying or defeating vested rights under written documents are usually the outgrowth of a criminal intent, the existence of which the law does not willingly presume, always preferring the presumption of innocence to that of guilt." [67 A. L. R., p. 1141.] But plaintiff points out that an exception to the rule exists in case of wills "which from their very nature cannot become operative or vest any right during the lifetime of the testator, and are absolutely subject to the volition of the testator up to the time of demise" hence "as to wills, the necessity for the presumption" as to material alterations in written instruments, stated supra, "does not exist," and the generally recognized rule is that where an unnoted and unexplained material alteration is apparent upon the face of a will it is presumed to have been made after execution and the burden is upon the party who derives, claims and seeks to retain some benefit by virtue of such alteration to show that it was made before execution. [Annotations 67 A. L. R., pp. 1138-1151; Alexander's Commentaries on Wills, sec. 1312, p. 2019; Guerin v. Hunt, 118 S. C. 32, 110 S. E. 71; In re Atkinson's Estate, 93 N. J. Eq. 139, 115 Atl. 370; Hembree v. Bolton, 132 S. C. 136, 128 S. E. 841.] Defendants having failed to meet the burden of showing that the alteration was made before execution of the codicil plaintiff invokes and relies upon this presumption.

In this State the rule, generally stated, as to written instruments, other than wills, seems to be that material alterations or erasures therein are presumed to have been made at or prior to the time of their execution unless the alteration or erasure appears suspicious on its face in which event no presumption arises and the time of making them is a question of fact with the burden on those benefiting and claiming by virtue thereof to show that such alterations were made at or prior to the execution of the instrument. [State ex rel. Dunklin County v. McKay, 325 Mo. 1075, 30 S. W. (2d) 83, and 330 Mo. 33, 49 S. W. (2d) 125; Paramore v. Lindsey, 63 Mo. 63; Stillwell v. Patton, 108 Mo. 352, 18 S. W. 1075; Collison v. Norman (Mo.), 191 S. W. 60; Meffert v. Lawson, 289 Mo. 337, 233 S. W. 31; German American Bank v. Manning, 133 Mo. App. 294, 113 S. W. 251; Parker v. Staley (Mo. App.), 55 S. W. (2d) 332.] Plaintiff says that applying this rule to the facts and situation of this case that the burden is cast upon defendants to show that the alteration was made prior to execution of the codicil which they have wholly failed to do and that the inference from the evidence on the part of plaintiff is that it was made afterwards. However without further discussion of the applicable rule it may for the purposes of this case be assumed that the alteration was made after the execution of the codicil.

Plaintiff says that this suit is not a collateral attack on the probate judgment nor an attempt to have a court of equity set aside the judgment of probate but contends; first; that in the probate of a will the court does not have jurisdiction to and does not determine, construe or interpret the content of a will or distinguish or pass upon the validity or invalidity thereof which can be done only in a proceeding in equity for such purpose but that the court is confined in the probate of a will solely to a determination of whether the instrument offered as a will was executed according to the formalities required by statute and that the testator was of full age and possessed of the requisite testamentary capacity. In this connection see Cox v. Cox, 101 Mo. 168, 13 S. W. 1055, and Hembree v. Bolton, 132 S. C. 136, 128 S. E. 841; also Drew v. Platt (Mo. App.), 52 S. W. (2d) 1041. Second, that if it be granted that in the probate of a will the court does have jurisdiction to determine the validity of any provision, alteration or apparent material change made in the original dispositive provisions therein that such was not done in this instance as appears by the proof made and the judgment of probate entered, which is set out supra, and that the extent of the probate judgment in this instance was to admit the will and codicil to probate in the condition and form in which it was presented, that is, with the words "and of her present marriage with Little" with line drawn in ink through them as a part of the will subject to a construction or determination of the validity and effect of the apparent

alteration in a proper proceeding in equity. It is apparent that neither the proof in the probate court nor the probate judgment undertook to determine the matter as was done in Drew v. Platt, supra. Again and for the purposes of this case we allow plaintiff's second of the two next above propositions without the necessity of ruling the first. In doing this we come to the defense of adverse possession.

That defendants have been in the open, notorious, exclusive and continuous possession of all the land involved under claim of title thereto for a period of twenty-six years next preceding the filing of this suit during which time they paid all taxes thereon and made improvements is undisputed. Plaintiff was a minor when defendants went into possession of the land under the deed by the trustees to them and the subsequent partition deed, in 1905. He attained his majority April 23, 1907. He made no demand and asserted no interest or claim until, as he states, sometime in May, 1931, being more than twenty-four years after he attained his majority and twenty-six years after defendants went into possession. Defendants invoke both sections 850 and 852, Revised Statutes 1929. Section 850 provides that, "No action for the recovery of any lands, tenements or hereditaments, or for the recovery of the possession thereof, shall be commenced, had or maintained by any person, . . . unless it appear that the plaintiff, his ancestor, predecessor, grantor or other person under whom he claims was seized or possessed of the premises in question, within ten years before the commencement of such action." Section 852 provides that, "If any person entitled to commence" an action under Section 850 "be at the time such right or title shall first descend or accrue, . . . within the age of twenty-one years . . . the time during which such disability shall continue shall not be deemed any portion of the time . . . limited for the commencement of such action . . . but such person may bring such action . . . after the time so limited, and within three years after such disability is removed: Provided, that no such action shall be commenced, had or maintained . . . by any person laboring under the disabilities specified in this section, after twenty-four years after the cause of such action . . . shall have accrued." But in avoidance of the bar of the Statutes of Limitation plaintiff's position is that when defendants took title to and went into possession of the land in 1905 a resulting trust in his favor arose to the extent of a one-fourth interest therein which defendants held for him as trustees in such resulting trust and that his cause of action did not accrue until he discovered or obtained knowledge of the existence of such trust which was, he claims, in May, 1931.

First granting for the present that a resulting trust arose in plaintiff's favor in 1905, and that limitation would not commence to run against him as the beneficiary therein until he learned of the

existence of such trust. The testimony of Ferrell will be recalled wherein he stated that in 1906, when plaintiff was nineteen or twenty years of age, he went with plaintiff to the courthouse in Kansas City for the purpose of viewing and examining the will of plaintiff's grandmother; that they examined the original will and codicil then on file in the office of the clerk of the probate court; that on that occasion plaintiff "himself" saw and read both the original will and the codicil thereto, "read them both all the way through." This testimony was by deposition. Plaintiff testifying in person at the trial denied the testimony of Ferrell *in toto*. The chancellor may not have accepted the denial plaintiff made and may have believed Ferrell's testimony. The trustees had conveyed to defendants March 9, 1905, and the deed had been immediately placed of record. The chancellor could thus have found and believed that plaintiff acquired knowledge of the condition of the codicil and the provisions thereof in 1906, and was therefore barred by the Statutes of Limitation. We are inclined to accord great deference to the finding of the chancellor on facts involving the credibility of a witness who appears before him.

But disregarding Ferrell's testimony and according the fullest credence to plaintiff's testimony that he had no knowledge whatsoever of the provisions and condition of the original codicil until May, 1931, when he for the first time saw and examined same and shortly thereafter filed this suit we proceed to an examination of plaintiff's theory of a resulting trust. It is perhaps well to here observe that plaintiff does not allege, nor does the proof tend to show, the essential elements of a constructive trust. We make this observation in view of the confusion which seems, in some measure, to result in the cases cited. Fraud, actual or constructive, is an essential element in the creation or existence of a constructive trust. [Young v. Kansas City Life Ins. Co., 329 Mo. 130, 43 S. W. (2d) 1046; Norton v. Norton (Mo.), 43 S. W. (2d) 1024; Ferguson v. Robinson, 258 Mo. 113, 167 S. W. 447; 65 C. J., p. 455.] Defendants had no knowledge, either actual or constructive, of plaintiff's right or interest, if any, and there is no showing upon which they can be charged with fraud, either actual or constructive, and a constructive trust imposed upon them. And it follows there was no showing of any "improper act" (Sec. 879, R. S. 1929) or any sort of fraudulent concealment on the part of the defendants such as would toll the running of the statutory limitation.

Before turning to a discussion of resulting trusts we will notice two cases cited and strongly urged by plaintiff as applicable to the instant case, viz.: Case v. Goodman, 250 Mo. 112, 156 S. W. 698, and Case v. Sipes, 280 Mo. 110, 217 S. W. 306. Both cases grow out of the same state of facts. On July 15, 1843, Harrison McGlothling, the then owner, conveyed the land involved in the suits to one John Terrell as trustee by deed recorded on the same day "in trust for the use and benefit of Frances Case, and the heirs of her body." The

deed created an express trust and the recording thereof was constructive notice of the provisions stated therein. Frances Case was married at the date of the deed and her husband died in 1887. The deed to Terrell "as trustee for the use and benefit of Frances Case and the heirs of her body" did not give the trustee any power of sale and contained "no words creating an active trust." In 1855 Terrell as trustee "for the expressed consideration of $400 conveyed the land to William Brown" and the defendants in both cases derived their claim of title through mesne conveyances from Brown. The defendants in both cases and their predecessors in title had been in the open, notorious and exclusive possession since the deed from Terrell to Brown. The husband of Frances Case died in 1887. She died in 1907. The plaintiffs in both cases were the "heirs of her body." The first suit (Case v. Goodman) was filed in 1908; the second (Case v. Sipes) in 1914. In the Goodman case this court said: "One who, with knowledge of the trust, takes a conveyance from the trustee made in violation of his trust becomes himself a *trustee ex maleficio* and the Statute of Limitations does not run in his favor as against the *cestui que trust*. William Brown took title from John Terrell, the trustee, fully affected with constructive notice of the trustee's deed and the limitation therein to the bodily heirs of Frances Case. They took legal title just as Terrell held it, as trustee for Frances Case during her life with remainder to her bodily heirs. On the death of the life tenant, Terrell could not have held the land by the Statute of Limitations against the bodily heirs and neither can these defendants who stand in his shoes." In the Sipes case it is said: "The deed to Terrell, and the successive conveyances from him on down to appellants were properly recorded, and imparted notice, to all those dealing with said property, as to Terrell's authority to pass title. . . . Upon the death of Frances Case, in 1907, these respondents (plaintiffs-heirs of the body of Frances Case) became the fee-simple owners of said real estate as remaindermen. . . . As this suit was brought on September 26, 1914, respondents' right of action is not barred by limitation. . . . Nothing which the life tenant or the trustee did could affect their rights. . . . It is manifest . . . that these respondents as the bodily heirs of Frances Case had no right of action which could be asserted in court or elsewhere until the death of their mother. The Statute of Limitations, therefore, did not bar their right of recovery." In case of an express trust the Statute of Limitation does not run between a trustee and *cestui que trust* so long as the trust subsists for the possession of the trustee is the possession of the *cestui que trust*. In order to set the statute in motion in favor of the trustee the trust must terminate as by its own limitation or there must be a repudiation of the trust by the trustee and the assertion of an adverse claim by him and that fact made known to the *cestui que trust*. [37 C. J. 903.] In further discussing the exemption of express trusts from the Stat-

ute of Limitations it is said in 37 Corpus Juris at page 918: "The general rule is that for a trust to be exempt from the statute not only must it be an express trust . . . but the contest or suit involving it must arise between the trustee and the *cestui que trust.*" It is then pointed out that in qualification of that general rule, "it is held in some cases," citing Case v. Goodman, and Case v. Sipes, supra, that "where property held under an express trust comes into the hands of a third person having notice of the trust . . . the third person occupies the position of an express trustee and is not protected by the statute." In the foregoing cases the rights and interests of the beneficiaries of the trust were set out in the deed creating same which of record gave constructive notice thereof and Brown and his successors in title took with notice of the express trust created by the deed. Despite what is said in the Goodman case about the nonapplicability of the Statute of Limitations it is pointed out in the Sipes case the plaintiffs brought their actions within the period of limitation, that is within ten years after their mother's death. In the instant case as we have heretofore pointed out the defendants had no notice or knowledge, either actual or constructive, of a trust in the will in favor of plaintiff nor did the trustee's deed so show. Plaintiff does not claim defendants had constructive notice. It would seem to follow that had they had constructive notice he would also have had such notice. And here it might be recalled that at the time defendants took title to and went into possession of the land the express trust created by the will had terminated by its own limitation. We do not deem the two cases reviewed as applicable to or as affording a solution of the situation we are dealing with in the present case. It is true that while defendants took title without notice they were not purchasers for value and therefore took subject to such equities or rights as plaintiff might have in the land but unless they took under conditions creating a resulting trust in them the Statutes of Limitation bar recovery by plaintiff because admittedly he did not assert any claim until 1931.

■ A resulting trust, as distinguished from an express trust, is one implied by law from the acts and conduct of the parties and the facts and circumstances which at the time exist and attend the transaction out of which it arises. The general types of a resulting trust, recognized and enforced in equity, may be said to be: (1) Where a purchase has been made and the legal estate is conveyed or transferred to one party but the purchase price is paid by another party; (2) where a person standing in a fiduciary relation uses fiduciary funds or assets to purchase property in his own or a third person's name; (3) where property is transferred without any consideration coming from the donee or grantee under such circumstances that he is considered as holding the property for the benefit of the donor or grantor; (4) where property is acquired by a person under circumstances which show that it is conveyed to him on the faith of his intention to hold

it for or convey it to another, or to hold it for or convey it to the grantor or the grantor and another; and (5) the trust which arises in favor of the donor, or those claiming under him, where the trust is not fully declared, or fails, in whole or in part; as example see Sanford v. Van Pelt, 314 Mo. 175, 282 S. W. 1022; and Platt v. Huegel, 326 Mo. 776, 32 'S. W. (2d) 605. A resulting trust ''must be founded upon an equity in favor of the *cestui que trust* against the holder of the legal title.'' [65 C. J. 364.] The cases cited by plaintiff come within either the first or second division of the foregoing classification, which are the most generally found illustrations of a resulting trust. True the citations were made as authority for the proposition that the statutory limitation does not begin to run against the beneficiary in a resulting trust and in favor of the trustee in such trust until the beneficiary or *cestui que trust* learns of its existence. [Prewitt v. Prewitt, 188 Mo. 675, 87 S. W. 1000; Stoff v. Schuetze, 293 Mo. 635, 240 S. W. 139; and Clay v. Walker (Mo. App.), 6 S. W. (2d) 961, are cited.] In this case there was no privity of any kind between plaintiff and defendants nor did any fiduciary relationship exist and, as we have heretofore many times observed in the course of this opinion, the defendants had no knowledge or notice, either actual or constructive, of any claim or interest, if any, of plaintiff in or to the land. Under the facts, as we view them, the case does not fall within any generally recognized classification of a resulting trust. Under the facts, as we find them, it is difficult to conceive how the court can logically imply or hold that in equity the defendants took the title with the intention to hold, or had any reason to believe they should hold, as trustees for plaintiff or that a resulting trust arose. The situation appears to be resolved to that which we noted supra, viz.: that since defendants took without notice and were not purchasers for value they therefore took subject to such equities or rights plaintiff might have, which however to be maintained or enforced he must have asserted within the period of limitation and that was not done. It is our conclusion that plaintiff was thus barred by limitation.

It follows that the decree and judgment of the circuit court must be affirmed. It is so ordered. *Hyde* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All the judges concur.